Frank X. Ai/timari, J.
“ ‘ But what did the Doormouse say?, ’ one of the jury asked. ‘ That I can’t remember,’ said the Hatter. ‘ You must remember,’ remarked the King, ‘ or I’ll have you executed.’ ” (Lewis Carroll, Alice’s Adventures in Wonderland.)
Sir William Blaekstone declared “If a man in his sound memory commits a capital offence, and before arraignment for it, he becomes mad, he ought not be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defence ? ’ ’ (Blackstone’s Commentaries, Book IV, ch. II).
Accordingly the common law recognized the humane principle that an incapacitated person should not be tried for a criminal offense. The initial legislative enactment in New York stated “ No insane person can be tried, sentenced to any punishment, or punished for any crime or offence, while he continues in that state.” (2 Bev. Stat. of N. Y., part IV, ch. I, tit. VII, § 2, pp. 697-698; 3 Bev. Stat. of N. Y. [2d ed.], p. 832).
Subdivision 1 of section 730.10 of the CPL (eff. Sept. 1, 1971), defines the term “ incapacitated person ” as a “ defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense.”
The Commission Staff Comment to section 730.10 sets forth the meaning of the new “fitness to proceed” standard. It adopted the following language of Dusky v. United States (362 U. S. 402 [1960]): “whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him.” However, a few New York courts had previously discussed and applied such criteria. (See, e.g., People ex rel. Fazio v. McNeill, 4 A D 2d 686 [2d Dept., 1957]; People ex rel. Butler v. McNeill, 30 Misc 2d 722 [Sup. Ct., Dutchess County, 1961]; People ex rel. Bernstein v. McNeill, 48 N. Y. S. 2d 764 [Sup. Ct., Westchester County, 1944]; People v. Swallow, 60 Misc 2d 171 [Sup. Ct., Richmond County, 1969].)
In the Bernstein case (supra, p. 766), the court stated: “ Ability to make a defense, however, means more than capacity to *631 discuss his case with his attorney, answer questions, and to understand the nature of legal proceedings. If relator is to go to trial, he should be able to discuss with counsel, rationally, the facts relating to his case which are within his recollection. He should be able, rationally, to consider the evidence offered against him, to advise with his attorney concerning it, and to make such decisions as it may be necessary for him to make during the course of such a trial.”
Pursuant to an order of the court dated June 25, 1971, the defendant was examined at Nassau County Medical Center by two psychiatrists. The psychiatrists rendered their report on July 14, 1971. Although the examination was conducted and the report issued pursuant to the provisions of former section 658 et seq. of the Code of Criminal Procedure, the hearing held thereafter was based upon the provisions of article 730 of the CPL. Adjournments were requested by and granted to defense counsel.
At the time the psychiatrists examined the defendant they were of the opinion that Mr. Soto understood the charge and that he could discuss the charge with his attorney sufficiently to make his defense. The psychiatrists arrived at their stated conclusion even though the defendant had no recollection of the alleged act underlying the charge of murder.
At the hearing held herein, the psychiatrists reaffirmed their opinion under the test set forth in the CPL.
The definition of an “incapacitated person” contained in subdivision 1 of section 730.10 of the CPL raises the following two questions: Does the defendant, as a result of mental disease or defect, lack capacity to understand the proceedings against him, and does the defendant, as a result of mental disease or defect, lack capacity to assist in his own defense.
After reading the report of the psychiatrists, and listening to the testimony elicited at the hearing, this court finds that the first question must be answered in the negative. However, the second question is troublesome. (See People v. Stanhope, 44 Ill. 2d 173 [1969].)
The defendant herein is suffering from amnesia which prevents him from recalling facts immediately surrounding the alleged crime. The amnesia is neither feigned nor the result of malingering. It is, according to the psychiatrists, the result of an unconscious denial of a painful circumstance without which the defendant might lose his sanity. Thus, the defendant’s amnesia is genuine. According to the psychiatrists a *632 stimulus which could provoke a recollection of the tragic event, might, ironically, precipitate psychosis.
Consequently, the following question is squarely presented: Does an accused, who is sane and competent in all respects, except that he is suffering from amnesia which prevents him from recalling facts immediately surrounding the alleged crime lack capacity to assist in his own defense. (Cf. State v. McClendon, 103 Ariz. 105 [Sup. Ct. en banc 1968].)
According to the New York statute (CPL 730.10, subd. 1) before an accused can be declared to be an incapacitated person it must be shown that he is suffering from a mental disease or defect. In the case at bar, the psychiatrists found neither a mental disease nor defect, although at the examination the accused was somewhat depressed. Such finding was based upon the accused’s statement that he could not see his wife (the person he allegedly murdered), and children. Consequently, under the New York statute (CPL 730.10, subd. 1) the ultimate determination of “ fitness to proceed ” turns upon the happenstance of a mental disorder.
A note in the Yale Law Journal (71 Yale L. J. 109 [1961]) entitled “Amnesia: A case study in the Limits of Particular Justice” criticized such legislation. It said (p. 116): “ For while the policy underlying the doctrine of competency focuses on the impairment of the rational ability of the accused to conduct his defense, the rule presently applied by the courts is conditioned upon the fortuitous presence of a narrowly defined mental disorder.”
In Wilson v. United States (391 F. 2d 460, 463 [D. C., 1968]) a case which also questioned the prophylactic requirement of a metal disease or defect, the court stated that the real question was whether an accused could receive a fair trial in spite of the amnesia. (See, also, Reagon v. State, 251 N. E. 2d 829 [Ind.], dissenting opn., p. 833; State v. McClendon, 103 Ariz. 105, supra.) In Wilson (supra), the accused’s amnesia was caused by a severe head blow sustained in an automobile accident. Presumably, the court believed that the accused was not suffering from a mental disease or defect.
Other courts which have discussed the relationship of fitness to proceed and amnesia have held that amnesia does not prevent the commencement of trial. (Reagon v. State, supra; State v. Swails, 223 La. 751 [1953]; Commonwealth ex rel. Cummins v. Price, 421 Pa. 396 [1966].)
A rationale of such decisions is based upon the -thought that amnesia presents a situation which parallels other cases which *633 a defendant does not recall the facts surrounding the event, e.g. intoxication, blackout, and delayed arrest narcotic cases. A second rationale is set forth in Commonwealth ex rel. Cummins v. Price (supra, p. 407). The court stated, “ Unless an accused is legally insane, the law is not and should not be so unrealistic and foolish as to permanently free, without acquittal by a Judge or jury, a person against whom a prima facie case of murder is made out.” The latter reasoning is based upon the serious question of whether a person, who is accussed of a crime and who is accurately oriented in all respects except that he is suffering from amnesia, may be committed to a mental institution to await the day he can recall the facts and circumstances surrounding the alleged crime. It is this court’s view that article 730 of the CPL of New York does not permit such a commitment unless a finding of mental disease or defect is made. (CPL 730.50 subd. 1; 730.10, subd. 1.) (See, also, United States v. Wilson, 263 F. Supp. 528 [1966].) Cf. CPL 730.50 (subd. 3) wherein the maximum commitment to the Commissioner of Mental Hygiene shall not exceed two thirds of the authorized maximum term of imprisonment for the highest class felony charged.
Thus, the question is do you (1) commence trial, (2) release the defendant or (3) commit such person to a mental institution despite the statutory prohibition until the accused recovers from the amnesia. This court is not aware of any reported case wherein the second, or third alternatives were advocated. One court has expressly rejected the first alternative in a case involving a deaf mute who did not know sign language. (People ex rel. Myers on behalf of Lang v. Briggs, 46 Ill. 2d 281 [1970].)
In Wilson v. United States (391 F. 2d 460, 463-464, supra), Judge J. Skelly Weight was concerned with whether an amnesic defendant could receive a fair trial. Accordingly, he set forth several factors which a court should consider concerning the effect of amnesia upon the right to a fair trial and defendant’s capacity to assist his attorney. Among the criteria are:
(1) the extent to which the amnesia affected the accused’s ability to consult with his lawyer;
(2) the extent to which the evidence could be reconstructed, whether extrinsically or by the assistance of the Government, and
(3) the strength of the prosecutor’s case.
This court would simply add factors such as the extent to which the presentation of relevant defense might be affected and whether defense counsel would be affected in his examination or cross-examination of witnesses.
*634 This court is of the opinion that the general approach which Judge Weight established in the Wilson case (supra) is equally applicable herein. The defendant herein is able to discuss the case with counsel. Evidence can be reconstructed extrinsically and by the assistance of the District Attorney. The court has previously read the Grand Jury minutes and concluded that the People’s case was legally sufficient. (See People v. Soto, Nassau County Ct., Nov. 16, 1971.) Furthermore, defendant’s counsel may move pursuant to article 240 of the CPL for discovery of “property” (as defined in CPL 240.10, subd. 2) which may assist in the reconstruction of the facts and circumstances surrounding the alleged act of the defendant. Information obtained thereby would thus give defense counsel evidence which would illuminate the facts and circumstances which are material to the proposed defense of insanity or the affirmative defense of extreme emotional disturbance, and also guide defense counsel in the examination and cross-examination of witnesses.
Based upon the psychiatric report, the testimony elicited at the hearing held hereon and the foregoing discussion of the law, this court concludes that the defendant is fit to proceed to trial. (GPL 730.10, subd. 1.) The court is mindful of the decision in People ex rel. Bernstein v. McNeill (48 N. Y. S. 2d 764, supra). However, there the defendant had, in addition to an amnesic condition, a diagnosis of psychosis-paranoia, a condition which is not present in the instant case. It is therefore
Ordered that the defendant’s motion for an order declaring defendant to be an incapacitated person is denied in all respects.