**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Wilburn Lloyd BORUM, Defendant-**
**Appellant.**

**No. 72-1100.**

United States Court of Appeals,
Tenth Circuit.

Aug. 1, 1972.

Jeff R. Laird, First Asst. U. S. Atty., Oklahoma City, Okl. (William R. Burkett, U. S. Atty., Oklahoma City, Okl., on brief), for plaintiff-appellee.

Joe L. Roselle, Oklahoma City, Okl., for defendant-appellant.

Before BREITENSTEIN, HILL and DOYLE, Circuit Judges.

DOYLE, Circuit Judge.

Defendant-Appellant was convicted of murder in the second degree. The victim was Frances O. Borum, his wife. She had been employed as a nurse at the Clinton Indian Hospital at Clinton, Oklahoma. On March 9, 1970, she was found dead in the driver's seat of her automobile on the hospital grounds, a government enclave. The murder had been perpetrated by some person who had been lurking in the back of the vehicle. She had been attacked from the rear following her entry into the car.

The sufficiency of the evidence in support of the charge is not here questioned. Indeed the circumstantial evidence in support of the conviction on the merits is more than adequate. The questions on this appeal pertain to the mental condition of the accused at the time of trial, and particularly the ability of the accused to aid in his defense and to be cognizant of the proceedings. The special problem in this regard is the alleged inability of the defendant to remember the occurrences on the night of the homicide. Because of this, his counsel argues that defendant's inability to furnish information as to acts and happenings at the time, render the proceedings invalid. Other points argued pertain to the failure of the trial court to instruct the jury that a defendant who is found not guilty by reason of insanity will be committed to an institution and finally the failure of the court to repeat its admonition to the jury to refrain from discussing the case among themselves or with anyone and to refrain from reading accounts of the case in the newspapers or other news media.

It is not necessary to detail the sordid facts. A brief sketch of the background information will provide the basis for insight into the insanity or amnesia issue. Defendant's wife had filed a divorce action one month prior to the homicide. On March 9, 1970, the day of the incident, defendant had tried to see her at the hospital but she would not see him. The deceased left work at about midnight and her body was discovered the following day in the driver's seat of her car which was parked on a single lane, seldom used road on the hospital grounds. Tire tracks matching those of the car being driven by the defendant were found in close proximity—behind the car of deceased. Certain items of the deceased including a bloodstained handbag and bloodstained scissors had been placed in the back of the car which defendant had driven. These were later

placed in large paper bags and deposited by defendant at a dump near the truck stop where he took off on the day following the murder. Defendant was at large for a year and was finally arrested in Violet, Louisiana, where he had assumed the identity of his brother. Some ten months after the homicide, defendant met an old friend and acquaintance and told him that the police had tried to pin the murder on him but that he was in New York at the time.

The trial court made a thorough inquiry before trial as to the competency of defendant to stand trial. Defendant was referred to the government hospital at Springfield, Missouri, where he remained for an extended period for observation and study. The hospital staff concluded that he was competent to stand trial and had legal capacity to commit the offense at the time. Following this the defendant was examined by a private psychiatrist and before trial a full hearing was had as to his competency to stand trial. On the basis of the evidence presented, it was held that the defendant was then competent.

## I.

### AMNESIA AS A DEFENSE

There is no serious contention by the defendant that he was afflicted with a mental disorder at the trial which interfered with his ability to understand the proceedings and to cooperate with counsel. He maintains instead that he was deprived of full opportunity to defend himself because of his inability to remember the events which transpired at the time of the offense. Since he at trial had a mental block on these events, so he argues, he was unable to communicate the facts from his standpoint to his counsel and on this account was deprived of due process. We must reject this contention.

There was testimony at the competency hearing that defendant had suffered and was continuing to suffer a memory failure starting either just before the murder of his wife or just afterwards so that his memory would not function. The psychiatrist called by the defendant diagnosed this as hysterical amnesia. The doctor said that this could result either from guilt or from extreme shock, and that the taking on of a different identity could have been the result of an involuntary disassociative reaction. He further stated that this was probably associated with guilt while conceding the possibility that the shock of the wife's death could have produced it. In the opinion of the government's psychiatrist, the defendant did in fact have a memory of the details of the offense. He stated that it is not unusual for prisoners to make such a claim, and that it is not abnormal for prisoners to wish to forget events which are painful. On the question whether the amnesia was real or feigned, Dr. Prosser, the physician called by defendant made a real effort to penetrate the memory failure by use of sodium pentothol. This effort yielded nothing. However, both experts agreed that this drug will not necessarily provide an answer to the issue of whether the amnesia is real or feigned—a person bent on fabrication can not be opened up invariably. The trial court did not determine whether the amnesia was real or feigned, but apparently did not consider such finding to be essential.

The applicable statute, 18 U.S.C. § 4244, does not embrace or even contemplate this issue. This section provides that where it appears that a person charged with an offense against the United States may be presently insane, or so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he (the district attorney) shall file for a judicial determination. It is clear that the section was designed to deal with present incompetency. The legislative history bears this out. See 1949 U.S.Code Cong.Serv. Vol. 2 (81st Cong., 1st Sess.) p. 1928.[1]

---

1. The Honorable James V. Bennett, Director, Federal Bureau of Prisons, said:

The bill provides for a uniform procedure for delinquents suffering from

In Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) the Supreme Court recognized in passing (the case being one in which the record was held insufficient) that the test is the present ability of the accused "to consult with his lawyer with a reasonable degree of rational understanding —and whether he has a rational as well as factual understanding of the proceedings against him." This was also the view expounded by this court in its fully considered opinion in Wolcott v. United States, 407 F.2d 1149 (10th Cir. 1969).

Traditionally the courts have been concerned with protecting an accused afflicted with a mental disorder from being tried while he lacks capacity and also with protecting him from being found guilty of an offense in a situation in which he lacked mental capacity to commit the offense. The protection of the law has also extended to an accused who has become insane after conviction. So far there has not been any appreciable tendency in our courts to recognize hysterical amnesia relating to the events surrounding the commission of the offense as a *per se* defense. There is one early district court case, United States v. Chisholm, 149 F. 284 (D.Ala.1906). There the judge in his charge recognized that control of memory was an ingredient of competency to stand trial. This case pre-dated the enactment of Section 4244, supra. The other case which is relied on is Wilson v. United States, 129 U.S.App.D.C. 107, 391 F.2d 460 (1968). There the defendant had suffered a severe physical trauma which fractured his skull and ruptured several blood vessels in the brain. He remained unconscious three weeks, and sustained a partial paralysis and speech defect. A majority of the panel remanded the case for more extensive findings as to the effect of the amnesia on the fairness of the trial, including the strength of the evidence and whether the defendant was deprived of any defense. The facts in Wilson are such as to render the testimony as to amnesia credible and to pose at least a doubt as to whether the trial could be fair.

The English Court of Appeal in Regina v. Podola, 3 All England Law Reports 418, 432, 433 (1959), had our identical question. This was a homicide case in which the defendant was accused of slaying a policeman. The court noted that:

This case is the first attempt in England to assert that hysterical amnesia covering the period of events which are the subject of the indictment renders a man insane so that he cannot be tried.

The conclusion was that since amnesia is not a form of insanity, it does not constitute a defense to the crime nor render the accused incompetent to be tried saying:

We agree with the opinions stated and the conclusions arrived at in Russell v. H. M. Advocate (50). The word used in the Criminal Lunatics Act, 1800, is the word "insane". It is true that in the case of a deaf mute the word "insane" does not strictly apply, but as was pointed out in R. v. Stafford Prison (Governor), Ex p. Emery (51) by Lord Alverstone, C. J., the practice of including as coming within that word the case of persons who, from mental or physical infirmity, cannot follow what is happening in a case is in accordance with reason and common sense. We cannot see that it is in accordance either with reason or common sense to extend the meaning of the word to include persons who are mentally normal at the time of the hearing of the proceedings against them and are perfectly capable of instructing their solicitors as to what submission their counsel is to put forward with regard to the commission of the crime.

mental disorders which exist either at the time of trial or occur during service of sentence, or continue when the prisoner has completed sentence and must be discharged.

To sum up the matter before us:

1. In our judgment there was a right of appeal by the appellant to this court.

2. There is no criticism to be made of the summing-up of the learned judge on the preliminary issue.

3. Even if the loss of memory had been a genuine loss of memory, that did not of itself render the appellant insane so that he could not be tried on the indictment, and no other ground for alleging insanity was put forward.

 We are not here ruling out all combinations of circumstances as being incapable of rendering the trial unfair in the present context. We rule only in the light of the facts presented. Here the evidence of guilt is overwhelming. And, from an examination of the record, it does not appear that the defendant was deprived of any defense which would have been available to him had he been able to relate the happenings to his counsel.[2]

Thus, we must reject the argument that the amnesia is a *per se* deprivation of due process.[3] Prejudice must be shown to exist—that there are, for example, facts available which could not be obtained from the file of the prosecution or from investigation by the defense. There is no suggestion as to the existence of a tenable defense which has been locked in by the amnesia.

Finally we note that counsel for defendant made full use of the evidence of amnesia in contending that the defendant was incapable of committing the offense at the time. Furthermore, full,

complete and adequate instructions were given to the jury on this subject. We fail to perceive any semblance of a deprivation.

## II.

## REFUSAL OF THE COURT TO INSTRUCT THE JURY ON COMMITMENT TO HOSPITAL

The defense requested and was refused an instruction which would have told the jury that defendant would be committed to a hospital until no longer a danger to himself or others, in the event that the jury returned a not guilty verdict. In refusing this the judge stated to counsel that there was no federal provision for committing a person who is no longer insane and that the competency hearing had resolved that defendant was not presently insane.

 The trial court was correct in so ruling. Commitment of the type envisioned is determined by federal statutes and these are restricted to insanity or incompetency occurring at or continuing through the federal criminal process. See Greenwood v. United States, 350 U. S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956); Wells by Gillig v. Attorney General of United States, 201 F.2d 556 (10th Cir. 1953). Moreover, there would have been no basis for such a commitment had defendant been found not guilty on the ground that he was insane, since under federal law the verdict is "not guilty" and there is no system of limited responsibility. It was for the jury to decide whether defendant was responsible at the time he performed the

2. In our case it cannot be said that counsel's inability to develop a theory of innocence was due to the amnesia of the accused. Full disclosure of the various FBI and prosecutorial investigations was made. But all demonstrable facts and inferences therefrom point inexorably to the guilt of the appellant, and there is no basis for believing that he is in possession of facts which would be exculpatory if only he could remember them. In addition, the record shows that defense counsel skillfully used the asserted amnesia in

support of the defenses of lack of responsibility, lack of intent and innocence. In these circumstances we must hold that defendant had a fair trial and that he was not deprived of his 6th amendment rights to confrontation and the adequate assistance of counsel.

3. Undoubtedly there are instances in which defense counsel may wish that their clients would have amnesia. We do not suggest that this is such an occasion.

criminal act. Thus it has been held that a requested instruction of the kind tendered would be improper since the not guilty verdict does not allow the judge to order the defendant committed to an institution. The disposition of the defendant is not in any case a jury issue. Pope v. United States, 372 F.2d 710, 731 (8th Cir. 1967); White v. United States, 387 F.2d 367 (5th Cir. 1967); Pope v. United States, 298 F.2d 507, 508–509 (5th Cir. 1962). Here, as in the above cited cases, no objection was made as to the principal instruction regarding insanity and criminal responsibility.

## III.

### WHETHER IT WAS ERROR TO ALLOW THE JURY TO SEPARATE DURING DELIBERATION; WHETHER THE FAILURE TO READMONISH THE JURY WAS ERROR

At the outset of the trial the court in detail admonished the jury of its duties not to discuss the case with anyone or read or listen to any accounts of it. He stressed that this duty was a continuing one to be observed at each recess and separation. After the case was committed to the jury and when it became evident at 10:00 P.M. that a verdict would not immediately be forthcoming the court permitted the jurors to return to their homes. The court did not repeat its instruction, and defense counsel did not make its objection until after the jury had left the courtroom and disbanded.

This court has held that the matter of permitting separation rests in the trial court's discretion. Also, prejudice must be shown.

Permitting the jury to separate during the course of the trial or after the case was committed to them and before it was decided was a matter within the discretion of the trial judge, and there was no showing of prejudice or abuse of discretion. United States v. Weiss, 431 F.2d 1402, 1407 (10th Cir. 1970).

 As to non-repetition of the instruction, defendant's objection came too late, and, moreover, prejudice will not be presumed when no showing has been made. The D.C. Circuit has long had a rule that the instruction must "invariably" be given at each separation, but the cases in which reversal was posited on this ground contain a showing that there were inflammatory newspaper accounts which the jury could have read, see Coppedge v. United States, 106 U.S. App.D.C. 275, 272 F.2d 504 (1959), or that there was separation over an excessive period of time. See Carter v. United States, 102 U.S.App.D.C. 227, 252 F. 2d 608 (1957).

The judgment is affirmed.