PEOPLE of the State of Colorado,
Petitioner,

v.

Dennis PALMER, Respondent.

No. 00SC326.

Supreme Court of Colorado,
En Banc.

Sept. 10, 2001.

As Amended Sept. 21, 2001.

Rehearing Denied Oct. 1, 2001. *

* Justice MARTINEZ and Justice BENDER would grant the petition.

Ken Salazar, Attorney General, Clemmie Parker Engle, Senior Assistant Attorney General, Appellate Division, Criminal Justice Section Denver, Colorado, Attorneys for Petitioner.

David Kaplan, Colorado State Public Defender, Nancy L. Flax, Deputy State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

The prosecution in this case seeks review of the court of appeals' decision in *People v. Palmer*, 9 P.3d 1156 (Colo.App.2000). After a jury trial, Defendant was convicted of possession of marijuana with intent to distribute. On appeal, the court remanded the case to the trial court for a determination as to the effect of Defendant's amnesia on his competency to stand trial. *Id.* at 1160. In doing so, the court of appeals adopted the test articulated in *Wilson v. United States*, 391 F.2d 460 (D.C.Cir.1968) as the appropriate analytical framework for assessing the competency of a defendant with no ability to recall the events underlying his conviction and whose amnesia was not self-induced. *Palmer*, 9 P.3d at 1159. The court of appeals also held that the trial court erred by denying Defendant's request for a second psychiatric examination by an expert of his own choosing at the state's expense. *Id.* at 1160.

We granted certiorari to address the appropriate treatment of a defendant's amnesia in determining his competency to stand trial. Specifically, we granted certiorari to determine whether the court of appeals erred in adopting the *Wilson* approach, in holding that a remand was necessary in this case, and in holding that Defendant was entitled to a second competency examination by a psychiatric expert under section 16–8–108, 6 C.R.S. (2000). We now hold that amnesia, in and of itself, does not constitute incompetency and that a trial court should engage in a fact-specific inquiry which includes a review of the totality of the circumstances of a particular case. Under such a review, a defendant's amnesia is only determinative to his competency when the defendant has shown that his impairment renders him unable to understand the proceedings against him or to assist in his own defense. We also hold that a trial court need not, in all cases, make post-conviction findings of competency as required under *Wilson*. Finally, we hold that a trial court need not provide an indigent defendant with a second competency evaluation by an expert of his choosing at the state's expense. Furthermore, while a defendant may request such an evaluation at his own expense, a trial court may require a showing of good cause before granting the request.

## FACTS AND PROCEDURAL HISTORY

Defendant was charged with possession of marijuana with intent to distribute after a confidential informant notified police that a substantial amount of marijuana could be found in the back of a white pickup truck driven by Defendant. The evidence presented at trial indicated that the truck was owned by Defendant's brother, but that Defendant had been borrowing it for about six months.

Prior to trial, Defendant was injured when the transmission of a car he was working on fell on his head, causing him to forget the circumstances surrounding his arrest. Defendant alleged that because of his injury, he was unable to provide his attorney with information which would form a defense or to provide names of witnesses. Thus, Defendant moved for a continuance for a mental health evaluation to determine his competence to stand trial. The trial court granted Defendant's motion and ordered a mental health evaluation.

The psychiatrist's report indicates that although Defendant could not remember anything about his arrest or the events leading up to the arrest, Defendant could discuss his childhood, his high school years, and his service to the United States Army. According to the report, Defendant was also able to discuss a number of prior arrests dating back to 1979. Finally, the psychiatrist's report indicates that Defendant understood the workings of the court. Therefore, the psychiatrist concluded that Defendant was competent to stand trial. Accordingly, the trial court denied Defendant's request for a second psychiatric examination at the state's expense and ruled that Defendant was competent to proceed.

On appeal, Defendant argued that because he was unable to assist his attorney in his defense, the trial court had erred in concluding that he was competent to proceed. Defendant argued that the trial court had also erred by refusing his request for an independent psychiatric examiner. The court of appeals accepted Defendant's arguments and remanded the case to the trial court for another competency determination. *Palmer,* 9 P.3d at 1160. Specifically, the court determined that the multi-factor test articulated in *Wilson v. United States,* 391 F.2d 460, 463–

64 (D.C.Cir.1968), was the appropriate analytical framework for determining the competency of an amnesiac to stand trial. *Palmer,* 9 P.3d at 1159. Although the court of appeals acknowledged that in some cases the evidence of the defendant's guilt is sufficiently overwhelming to eliminate the need for a remand, the court of appeals determined that the evidence in this case was largely circumstantial. *Id.* at 1159–60. Thus, it concluded that a remand for a determination under the *Wilson* test was necessary. *Id.* at 1160. Finally, the court of appeals held that Defendant was entitled to a second psychiatric examination under section 16–8–108. *Id.*

We granted certiorari to determine whether amnesia is relevant to a defendant's competency and whether both a pre-trial and post-trial competency determination is required. We also granted certiorari to determine whether the court of appeals erred by remanding this case and by ordering the trial court to grant Defendant's request for a second competency evaluation by an independent psychiatrist at the state's expense.[1]

## ANALYSIS

We have not previously addressed the appropriate treatment of a defendant's amnesia on a trial court's competency determination, nor whether an indigent defendant is entitled to a second competency evaluation at the state's expense. As these are issues of first impression, our analysis includes an examination of cases from other jurisdictions as well as academic sources.

### A. Standard of Review

▮▮▮ A defendant's competence to stand trial is a question of fact. We will therefore uphold a trial court's competency determina-

---

1. We granted certiorari on the following issues:
   1. Whether a defendant's amnesia—existing at the time of trial and resulting in an inability to recall the events surrounding the alleged offense—is relevant to his competency to stand trial.
   2. Whether the court of appeals erred in adopting the *Wilson* test, which requires in every case of alleged amnesia both a "pre-trial competency hearing" and a "post-trial determination" as to whether the defendant was able to "perform functions essen-

   tial to the fairness and accuracy" of the trial.
   3. Whether the court of appeals erred in holding that a remand was necessary in order to determine the effects of this defendant's amnesia on his competency to stand trial.
   4. Whether the court of appeals erred in holding that the trial court was obligated to appoint an independent psychiatric expert of the defendant's choosing to make a second competency examination at the state's expense.

tion absent an abuse of discretion. *Jones v. Dist. Court,* 617 P.2d 803, 807–08 (Colo.1980). Furthermore, the law presumes that a defendant is competent to stand trial; thus, the burden to prove incompetency rests with the accused. *See People v. Schwartz,* 135 Ill. App.3d 629, 90 Ill.Dec. 397, 482 N.E.2d 104, 110 (1985) (quoting Illinois statute stating that a defendant is presumed to be fit to stand trial); *State v. Martens,* 521 N.W.2d 768, 770 (Iowa App.1994) (holding that the law presumes an accused is competent to stand trial).

### B. Relevance of Amnesia on Competency Determination

Under section 16–8–110(1)(b), 6 C.R.S. (2000), "No person shall be tried, sentenced, or executed if such person is incompetent to proceed at that stage of the proceedings against him or her." We have previously held that, "Putting an accused on trial while he is incompetent violates due process of law." *Jones,* 617 P.2d at 806; *see Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (noting that the prohibition against trying a mentally incompetent defendant is "fundamental to an adversary system of justice.").[2]

Under section 16–8–102(3), 6 C.R.S. (2000), a defendant who suffers from a mental disease or defect which renders him incapable of 1) understanding the nature and course of the proceedings against him, or of 2) participating or assisting in his defense or cooperat-

ing with his defense counsel, is "incompetent to proceed".[3] In this case, the parties do not dispute Defendant's ability to understand the nature and course of the proceedings against him. Instead, the pertinent issue before us is whether Defendant's amnesia prevented him from being able to assist in his defense by rendering him unable to relate the events surrounding the offense to his attorney.

Several courts that have addressed the issue have concluded that amnesia alone does not hinder a defendant's ability to assist in his defense. *Villegas,* 899 F.2d at 1341 (upholding trial court's finding that defendant was able to assist in his defense despite limited amnesia); *State v. McClendon,* 103 Ariz. 105, 437 P.2d 421, 425 (1968) (holding that "limited amnesia does not totally incapacitate the defense and the defendant is free to assist counsel in numerous ways"); *Morrow v. State,* 293 Md. 247, 443 A.2d 108, 113 (1982) (holding that a defendant's amnesia did not prevent him from assisting counsel). For example, in *Morrow,* 443 A.2d at 113, the court stated:

> The thrust of defense counsel's argument seems to be that if the defendant has no recall of the events surrounding the crime then he has no rational or factual understanding so as to assist his counsel. We are not so persuaded. In our view the understanding required is the nature of the charge, the facts required to be proved to sustain the charge, and the consequences attending a conviction for having commit-

**2.** Other courts have held that the conviction of an incompetent defendant also impacts an accused's Fifth and Sixth Amendment rights to a fair trial and effective assistance of counsel. *United States v. Swanson,* 572 F.2d 523, 526 (5th Cir.1978).

**3.** This standard for competency is consistent with the competency test espoused by the federal courts and by other state courts. *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (noting that the test for a defendant's competency is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him"); *United States v. Hemsi,* 901 F.2d 293, 295 (2d Cir.1990) (construing *Dusky* test as interpreting 18 U.S.C. § 4241(d), which states that a trial court must find a defendant incompetent to stand trial if "the court finds by a preponderance of the

evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense"); *United States v. Borum,* 464 F.2d 896, 899 (10th Cir.1972)· (quoting *Dusky* test); *Reagon v. State,* 253 Ind. 143, 251 N.E.2d 829, 831 (1969) (holding that the test for competency is "whether [a defendant] has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to co-operate with his counsel to the end that any available defense may be interposed"); *Morrow v. State,* 293 Md. 247, 443 A.2d 108, 110 (1982) (noting that under the relevant Maryland statute, an incompetent defendant is one who is 1) unable to understand the nature of the object of the proceedings against him or 2) to assist in his defense).

ted the charge. Amnesia does not inhibit dialogue and discussion between attorney and client as to tactical decisions concerning the trial.

Indeed, a majority of courts have concluded that amnesia, in and of itself, does not constitute incompetency to stand trial. *See, e.g., United States v. Doke,* 171 F.3d 240, 248 (5th Cir.1999) (holding that amnesia by itself does not render a defendant incompetent); *Davis v. Wyrick,* 766 F.2d 1197, 1202 (8th Cir.1985) (holding that, "Amnesia alone is not a bar to the prosecution of an otherwise competent defendant."); *United States v. Borum,* 464 F.2d 896, 900 (10th Cir.1972) (rejecting the argument that trying an amnesiac defendant is a per se deprivation of due process); *United States v. Stevens,* 461 F.2d 317, 320 (7th Cir.1972) (stating that "we do not believe that due process requires that every defendant who claims loss of memory go free without trial"); *United States v. Sullivan,* 406 F.2d 180, 186 (2d Cir.1969) (refusing to hold that memory loss "is in all cases an automatic bar to prosecution for a crime amply established by competent evidence on trial"); *Wilson,* 391 F.2d at 464 n. 4 (noting that a defendant's awareness of his whereabouts and activities at the time of the crime is not an essential ingredient of competence). Many courts that have held that amnesia alone does not constitute incompetency have reasoned that an amnesiac defendant is no more disadvantaged than other defendants who have either suffered memory loss or whose defenses may be impaired by other

losses of evidence. *People v. Soto,* 68 Misc.2d 629, 327 N.Y.S.2d 669, 672 (N.Y. Cty Ct.1972) (noting that, "A rationale of such decisions is based upon the thought that amnesia presents a situation which parallels other cases [in] which a defendant does not recall the facts surrounding the event, e.g. intoxication, blackout, and delayed arrest narcotic cases.").[4] For example, in *Commonwealth ex rel. Cummins v. Price,* 421 Pa. 396, 218 A.2d 758, 760 (1966), the Supreme Court of Pennsylvania noted,

> For over 100 years, lack of memory in murder cases has been a common and frequent defense. Although the expressions differ, they all amount to the same thing. Cases abound with commonly used statements or testimony by a person accused of or convicted of murder that "I don't remember anything"; "my mind went blank"; "I blacked out"; "I panicked and don't remember what I did or anything that happened."

That court concluded that, "Unless an accused is legally insane, the law is not and should not be so unrealistic and foolish as to *permanently free, without acquittal* by a Judge or a jury, a person against whom a prima facie case of murder is made out." *Id.* at 763 (emphasis in original).[5]

We are persuaded by the reasoning of the majority of courts that have determined that a defendant's amnesia does not, in and of itself, require a finding of incompetency. A more difficult question is whether the defendant's lack of memory is even rele-

---

4. *See, United States v. Stevens,* 461 F.2d 317, 320 (7th Cir.1972) (endorsing view that an amnesiac's situation differs very little from a defendant who was home alone, asleep in his bed, at the time of the crime, or from a defendant whose only witnesses die or disappear before trial); *McClendon,* 437 P.2d at 423 (declaring that "amnesia is nothing more than a failure of memory concerning facts or events to which an individual has been exposed and ... every individual's memory process is marked by some distortion which may occur at any point"); *People v. Amador,* 200 Cal.App.3d 1449, 246 Cal.Rptr. 605, 607 (1988) (noting that, "The amnesic defendant is no worse off than the defendant who cannot remember where he was on a particular day because of the passage of time, or because he was drunk, drugged, unconscious or asleep at the time of the crime."); *Reagon v. State,* 253 Ind. 143, 251 N.E.2d 829, 831 (1969) (noting that "[m]any times ... evidence is lost, a material

witness dies, or, as in this case, the defendant has amnesia as to certain events or a time. Rarely would we find a case in which a defendant could not contend that he was deprived of some evidence and therefore ought not to be tried"); *Morrow,* 443 A.2d at 112 (noting that everyone is amnesiac to some degree, and that the practical effect of amnesia is the same as being alone in bed at the time of the crime, or memory loss from drunkenness or drugs).

5. Other courts have interpreted the reasoning of the *Cummins* decision as being reflective of a concern as to "whether a person, who is accused of a crime and who is accurately oriented in all respects except that he is suffering from amnesia, may be committed to a mental institution to await the day he can recall the facts and circumstances surrounding the alleged crime." *Soto,* 327 N.Y.S.2d at 673.

vant to a competency determination. Courts have split on this issue. One view holds that if the defendant has the present ability to understand the proceedings against him, to communicate with his lawyer, and generally to conduct his defense in a rational manner, then his loss of memory is irrelevant to a competency determination. *See, e.g., Parson v. Anderson,* 354 F.Supp. 1060, 1071–72 (D.Del.1972). Another line of cases, in contrast, holds that amnesia is relevant to the issue of competency, but is only determinative if a defendant suffers a loss of memory so severe that it renders him unable to understand the proceedings against him or to assist in his own defense.[6] *See, e.g., Wilson v. United States,* 391 F.2d 460, 463–64 (D.C.Cir.1968); *United States v. Chisolm,* 149 F. 284, 287 (C.C.S.D.Ala.1906). We find this latter approach more convincing.

■ As with any other claim of incompetency, a trial court's determination as to whether an amnesiac is incapable of understanding the proceedings against him or of assisting in his defense is a fact-specific inquiry requiring a review of the totality of the circumstances of a particular case. *See Watts v. Singletary,* 87 F.3d 1282, 1289 (11th Cir.1996) (holding that, "The competency determination, because it looks to the capacity of a particular defendant to play a fact-specific role at trial, requires a case-by-case assessment."); *United States v. Swanson,* 572 F.2d 523, 526 (5th Cir.1978) (holding that the "propriety of trying an amnesiac defendant is a question to be determined according to the circumstances of each individual case"); *Aldridge v. State,* 247 Ga. 142, 274 S.E.2d 525, 530 (1981) (quoting *Swanson* in holding that the determination as to the competency of an amnesiac defendant should be made according to the circumstances of each individual case).

Some courts have listed specific factors to be considered by a trial court in making its fact-specific competency determination. *Villegas,* 899 F.2d at 1341 (holding that factors to be considered include: "whether the defendant has any ability to participate in his defense, whether the amnesia is temporary or permanent, whether the crime and the defendant's whereabouts at the time of the crime can be reconstructed without his testimony, whether the government's files will be of assistance in preparing the defense, whether the government's case is strong or weak, whether access to government files would help the defendant prepare a defense, and whether information held by the prosecution that could fill in gaps in the defendant's memory would reduce the possibility of prejudice."); *Swanson,* 572 F.2d at 527 (noting that some relevant questions include: whether the crime and the defendant's whereabouts can be reconstructed without his testimony, and whether the strength of the case against the defendant may make his own testimony less critical than in a weaker case); *Wilson,* 391 F.2d at 463–64 (listing six factors to be considered in making detailed written findings concerning an amnesiac defendant's competency).[7]

---

6. Courts have articulated this principle in varying fashions. For instance, in *Chisolm,* the court instructed the jury to consider whether "the mind of the defendant at the bar ... [is] so far from normal and so impaired by disease as to make it improper and unjust to keep him on trial for the offense for which he has been arraigned." *Chisolm,* 149 F. at 290. Other courts, after concluding that amnesia is not a *per se* defense, have characterized the relevant inquiry as whether the defendant was prejudiced by his impairment. *See United States v. Borum,* 464 F.2d 896, 900 (10th Cir.1972) ("Prejudice must be shown to exist."); *Wilson v. United States,* 391 F.2d 460, 464 (D.C.Cir.1968) (concluding that it is the probability of prejudice, not the lack of memory *per se* that is controlling); *see also Parson v. Anderson,* 354 F.Supp. 1060, 1071 (D.Del.1972) (characterizing this line of cases as standing for the proposition that "a conviction of an amnesiac cannot stand unless it appears that he was not

substantially prejudiced by his impairment"). Regardless of the language used, what is determinative in evaluating the competency of an amnesiac defendant is the same as for any other mental disease or defect: whether the defendant is capable of understanding the proceedings against him and assisting in his defense.

7. The *Wilson* the court listed the following factors to be considered when determining the effect of a defendant's amnesia:

(1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer.

(2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf.

(3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the

While the factors articulated by these courts may bear on whether an amnesiac defendant is incapable of understanding the proceedings against him or of assisting in his defense, we decline to adopt a rigid analysis of competency based on any particular list of factors. *See Chisolm,* 149 F. at 287 (reasoning that each determination of competency is unique and must therefore be decided on a case-by-case basis).

We likewise decline to adopt the rigid procedural requirements of *Wilson,* which include both a pre-trial prediction as to an amnesiac defendant's competency and also a post-conviction determination as to whether the defendant had indeed been competent. 391 F.2d at 463 (noting that, "[The trial judge] should, before imposing sentence, make detailed written findings, after taking any additional evidence deemed necessary, concerning the effect of the amnesia on the fairness of the trial."). While many courts have adopted the *Wilson* factors and its procedural approach,[8] others have specifically declined to do so. *See, e.g. Swanson,* 572 F.2d at 526 n. 3 (refusing to adopt *Wilson*'s requirement for a post-trial competency determination, stating, "We suggest no standard procedural approach.... Because competency is an essential consideration in the fairness of the trial, the court may at any time during or after the trial reevaluate the competency of the accused, with or without a motion by counsel."); *State v. Owens,* 248 Kan. 273, 807 P.2d 101, 106 (1991) (refusing to require the post-trial findings discussed in *Wilson* ); *Morrow,* 443 A.2d at 110–13 (refusing to adopt *Wilson's* case-by-case approach); *Peabody,* 611 A.2d at 833 (stating, "Our rejection of the *Wilson* test stems from the fact that our criminal jurisprudence presently guarantees a fair trial that entails rules of

evidence and procedure designed to ensure a workable balance of interests of the defendant, the prosecution, and the court.").

We are convinced that the relevant Colorado statutes and case law on the subject do not require both a pre-trial competency determination and a post-trial determination based on specific findings under the factors articulated in *Wilson.* Indeed, section 16–8–110(2) provides that the issue of incompetency may be raised in advance of the proceeding either by the judge, who should suspend the proceeding, or by motion of either party. That section also provides that the parties may file a motion after the commencement of the proceeding only "if, for good cause shown, the mental condition of the defendant was not known or apparent before the commencement of the proceeding." § 16–8–110(2)(b). Once a determination of competency has been made, the trial judge has a duty to review the defendant's case at least every six months to consider the possibility that the defendant will be restored eventually to competency. § 16–8–114.5(1), 6 C.R.S. (2000); *People v. Zapotocky,* 869 P.2d 1234, 1237 (Colo.1994). We have also previously held that the issue of competency may be raised at any time, though preferably prior to the commencement of a proceeding. *Jones,* 617 P.2d at 807; *see also People v. Corichi,* 18 P.3d 807, 811 (Colo.App.2000) (holding that a competency hearing conducted fifteen months after trial did not violate due process). However, nothing in the relevant Colorado statutes or case law requires a trial court to make a post-conviction competency determination.

■ In summary, we hold that amnesia, in and of itself, does not constitute incompeten-

---

crime itself as well as any reasonably possible alibi.

(4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.

(5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.

(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.

391 F.2d at 463–64.

8. *United States v. Davis,* No. 97–3322, 1999 WL 29160, at *6, 1999 LEXIS 1030, at *17–18 (10th Cir.1999); *United States v. Rinchack,* 820 F.2d 1557, 1569 (11th Cir.1987); *State v. Ferguson,* 26 Ariz.App. 285, 547 P.2d 1085, 1086 (1976); *State v. Gilbert,* 229 Conn. 228, 640 A.2d 61, 65 (1994); *State v. Martens,* 521 N.W.2d 768, 770–71 (Iowa Ct.App.1994).

cy. Instead, a trial court should engage in a fact-specific inquiry which encompasses a review of the totality of the circumstances of a particular case. Although this review may include considerations as to a defendant's memory loss, no particular set of factors is determinative. But if a defendant's amnesia renders him unable to understand the proceedings against him or to assist in his own defense then he must be found incompetent. Finally, we hold that a trial court need not, in all cases, make post-conviction findings of competency as required under *Wilson.*

■ A review of the record in the present case indicates that the Defendant was not unable to understand the proceedings against him or to assist in his own defense. Thus, the trial court did not abuse its discretion in determining that Defendant was competent. As discussed above, the psychiatrist's report indicates that Defendant was able to understand court procedures and the nature of the charges against him. Furthermore, although Defendant contends that he was unable to provide to his attorney information that would form a defense, Defendant was able, and did, in fact, contend at trial that he did not know that the marijuana was in the back of his truck. Moreover, the record indicates that Defendant was charged on June 17, 1996 and was not injured until July 4, 1996. Thus, the Defendant had an opportunity to discuss the charges and to provide information concerning the crime to his attorney prior to his injury. *See Villegas,* 899 F.2d at 1342 (noting that the defense was well underway prior to the defendant's illness in holding that defendant's limited amnesia did not render him incompetent).

■ Finally, we reject Defendant's argument that his amnesia prevented him from being able to testify on his own behalf and thus violated his right to a fair trial. Again, we find that under the facts of this particular case, Defendant's inability to testify as to the pertinent events surrounding his arrest does not differ from the situation facing other defendants and thus fails to render Defendant particularly prejudiced by his condition. *See State v. Martens,* 521 N.W.2d 768, 771 (Iowa App.1994) (noting that, "In a way, the

inability to personally testify about the facts of an incident is a disability shared to some degree by many defendants due to natural memory attrition or the failure to observe."); *State v. McIntosh,* 137 Wis.2d 339, 404 N.W.2d 557, 561 (App.1987) (same).

The defendant was in a position similar to other defendants who have either suffered memory loss or whose defenses may be impaired by other loss of evidence. *See* cases cited *supra* note 4. Accordingly, because the record supports the trial court's determination that Defendant was competent to stand trial, we hold that Defendant was not deprived of his right to a fair trial notwithstanding his inability to recall the events underlying the offense for which he was convicted. *State v. McClendon,* 103 Ariz. 105, 437 P.2d 421, 425 (1968) (stating, "We believe that a defendant is entitled to a fair trial, but not necessarily a perfect trial."); *State v. Severns,* 184 Kan. 213, 336 P.2d 447, 454 (1959) (holding in amnesia case that defendant is entitled to a fair trial but not a perfect one); *State v. Peabody,* 611 A.2d 826, 833 (R.I.1992) (adopting *McClendon* analysis in amnesia case in noting that a defendant is entitled to a fair, but not necessarily perfect trial). Because we find that the trial court's determination was not an abuse of discretion, we reverse the court of appeals' decision remanding the case to the trial court for specific post-trial findings under the *Wilson* factors.

### C. Psychiatric Evaluation at State Expense

■ Once the issue of competency is raised, a trial court must undertake a two-step procedure involving first a preliminary finding and then a final determination as to the competency of the defendant. § 16–8–111, 6 C.R.S. (2000); *Jones,* 617 P.2d at 806. If a trial court "feels that the information available to it is inadequate for making a preliminary finding, it may order a competency examination or such other investigation as it deems advisable." § 16–8–111(1); *Jones,* 617 P.2d at 806. A court may order another competency examination prior to a competency hearing if adequate psychiatric information is not already available.[9] § 16–8–111(2).

---

9. If neither party requests a competency hearing in writing within a time limit set by the court, the

preliminary finding becomes a final determination. § 16–8–111(2).

Finally, under section 16–8–106(1), 6 C.R.S. (2000), a court may order additional examinations upon a showing of good cause.

Section 16–8–108, 6 C.R.S. (2000) provides that a defendant may be examined by a psychiatrist, psychologist, or other expert of his own choice upon filing a timely motion with the court. Furthermore, under section 16–8–119, 6 C.R.S. (2000), an indigent defendant may be appointed any physicians, psychologists, or attorneys to which he is entitled at the state's expense. Defendant argues that these sections should be construed in conjunction with the provision in section 16–8–106(1) stating that "[n]othing in this section shall abridge the right of the defendant to procure a psychiatric examination as provided in section 16–8–108," to mean that he is entitled to a second psychiatric examination by an expert of his choosing at the state's expense. We disagree.

We have previously held that section 16–8–108 does not "guarantee that the expert selected by an indigent defendant will in all cases be provided without cost to him." *Massey v. Dist. Court,* 180 Colo. 359, 363, 506 P.2d 128, 130 (1973) (construing predecessor statutes to sections 16–8–108 and 16–8–119). We have also held that, "Under the provisions of Section 119, an indigent defendant is given the right to have the state pay for those experts to which he is entitled under law, but not to have the state pay for a particular expert which he might select or desire." *Id.* We therefore conclude that while a defendant is entitled to an examination by an expert of his choosing, the state is not obligated to pay for such an expert. Moreover, a paying defendant wishing to exercise his right to second competency evaluation by an expert of his own choosing must nonetheless make a showing of good cause under section 16–8–106.

We therefore disagree with the court of appeals' determination that Defendant was entitled to a second examination at the state's expense. Moreover, we find that Defendant made no showing of good cause entitling him to a second competency evaluation, even at his own expense. As discussed

above, the record supports the trial court's determination that Defendant was competent to stand trial. Thus, Defendant's argument that the psychiatrist applied the incorrect legal standard in concluding that he was competent lacks merit.[10] Accordingly, we reverse the court of appeals' judgment directing the trial court to grant Defendant's request for a second competency evaluation pursuant to section 16–8–108, and reinstate Defendant's judgment of conviction.

## CONCLUSION

We hold that amnesia, in and of itself, does not constitute incompetency and that, a trial court should engage in a fact-specific inquiry which encompasses a review of the totality of the circumstances of a particular case. Although this review may include considerations as to a defendant's memory loss, no particular set of factors is determinative. If, however, a defendant demonstrates that his amnesia renders him unable to understand the proceedings against him or to assist in his own defense, a trial court must find him incompetent to stand trial. Finally, we hold that a trial court need not, in all cases, make post-conviction findings of competency as required under *Wilson.*

In this case, we conclude that Defendant's amnesia did not render him unable to understand the proceedings against him or to assist in his own defense. Moreover, the record supports the trial court's determination that Defendant was competent to stand trial. As such, we hold that Defendant was not deprived of his right to a fair trial and that the trial court did not abuse its discretion in this determination. Accordingly, we reverse the court of appeals' decision remanding the case to the trial court for specific findings under the *Wilson* factors.

Finally, we hold that a trial court need not grant an indigent defendant's request for a second competency evaluation by an expert of his choosing at the state's expense. Moreover, we hold that a Defendant must make a showing of good cause to warrant a second competency evaluation under

---

10. We have previously held that competency to stand trial is a matter for judicial determination and is not a finding to be made solely on the basis of a psychiatrist's report. *People v. Zapotocky,* 869 P.2d 1234, 1244 (Colo.1994).

section 16–8–106(1). Accordingly, we reverse the court of appeals' judgment directing the trial court to grant Defendant's request for a second competency evaluation by an expert of his choosing at the state's expense pursuant to section 16–8–108, and reinstate Defendant's conviction.

Justice BENDER concurs in part, and dissents in part, Justice MARTINEZ joins in the concurrence and dissent.

Justice BENDER, concurring in part, and dissenting in part.

I agree that a defendant's competency must be determined from the totality of the circumstances, and I further agree that factors such as those suggested in *Wilson v. United States,* 391 F.2d 460 (D.C.Cir.1968), should not rigidly dictate the trial court's competency determination. However, I would hold that these factors and factors articulated by courts following and expanding on *Wilson* provide guidance for the trial court's competency analysis. Because the trial court did not engage in a fact-finding inquiry to determine whether the defendant's amnesia would impair his ability to assist in his own defense such that he would be incompetent to stand trial, I would affirm the court of appeals and remand this case to the trial court for the entry of appropriate factual findings on this issue and direct the trial court to use the *Wilson* factors as guidance in reaching their competency determination.

### I.

The competency evaluation performed by Dr. Ouligian, as the majority states, reported that the defendant could recall some early memories of his life, but was unable to remember any of the more recent events leading to his arrest in this case. *See* maj. op. at 865. Additionally, the report stated the defendant had been diagnosed as having "cognitive impairment primarily consisting of poor attention, but also marked judgment and abstraction deficits are noted in addition to concerns about his memory." The evaluation noted that the defendant "thought it was winter, when it was really spring. However, there was snow on the ground the day of the interview." At the time of the evaluation, Mr. Palmer could remember three words immediately, but could not remember any of

them after five minutes. Additionally, Dr. Ouligian reported that the defendant only scored 24 out of 30 on a Mini–Mental Status exam, meaning that the defendant had moderate cognitive difficulties. Dr. Ouligian also quoted the defendant as saying he could help his attorney defend him by "telling him what happened." Based on these facts the doctor gave his opinion that the defendant is competent to proceed with trial because "he would be able to assist his lawyer."

The trial court did not make specific factual findings as to the defendant's competency. Rather, the trial court merely found that Dr. Ouligian, who evaluated the defendant "determined [the defendant] was competent and within the meaning of competency it certainly fits the court's understanding." The court denied the motion for a further competency examination, reasoning that, contrary to the defendant's argument, inability to recall who would be helpful witnesses does not make the defendant incompetent to proceed.

### II.

The majority states that "[w]hile the factors articulated by [*Wilson* and other courts] may bear on whether an amnesiac defendant is incapable of understanding the proceedings against him or of assisting in his defense, we decline to adopt a rigid analysis of competency based on any particular list of factors." Maj. op. at 869. I agree that it is unnecessary for this court to establish a rigid set of factors upon which a court determines a defendant's competency. *See United States v. Chisolm,* 149 F. 284, 286 (C.C.S.D.Ala.1906) ("Finite man ... gropes but darkly into the conditions of the human mind, and it is impossible for any court to lay down any fixed rule, as a matter of law, as to any particular state of facts which will unerringly demonstrate sanity, or ... the degree of aberration which, when found to exist ... unfits [an accused person] to rationally aid in his defense when arraigned for crime.").

When a trial court makes its competency determination, however, the factors set forth in *Wilson* and by subsequent courts modifying and following the *Wilson* approach should guide the trial court in determining whether, under the totality of the circum-

stances, the defendant's amnesia renders him unable to assist counsel in his defense. As quoted in footnote seven of the majority opinion on page 868, the factors suggested in *Wilson* lead a trial court to consider the extent to which amnesia affects a defendant's ability to consult with his counsel, to testify on his own behalf, and to establish defenses. Included in this consideration will be whether the defendant can extrinsically reconstruct evidence in the case to determine the facts of the crime in question, and the strength of the prosecution's case against the defendant. *See Wilson,* 391 F.2d at 463–64. All of these considerations contribute to an understanding of whether a defendant will be prejudiced by his impairment such that he will be unable to assist his attorney in his defense.

Other cases that embrace the *Wilson* factors additionally suggest that a court should determine if a continuance may abate the effect of the amnesia, whether the amnesia is real or feigned, whether the crime and the defendant's whereabouts can be reconstructed without his testimony, and whether access to government files will help the defendant prepare his defense. *United States v. Swanson,* 572 F.2d 523, 526–27 (5th Cir.1978); *see also United States v. Villegas,* 899 F.2d 1324, 1341 (2d Cir.1989); *United States v. Rinchack,* 820 F.2d 1557, 1569 (11th Cir.1987); *United States v. Stubblefield,* 325 F.Supp. 485, 486 (E.D.Tenn.1971). These factors also provide substantial guidance to a trial court in determining under what circumstances a defendant's amnesia would render him unable to assist his counsel in his defense.

The majority holds that "a trial court should engage in a fact-specific inquiry which encompasses a review of the totality of the circumstances of a particular case." Maj. op. at 870. I agree.

In this case, the trial court did not conduct such a factspecific inquiry, but cursorily adopted Dr. Ouligian's findings as determinative of the defendant's ability to stand trial. In particular, the trial court failed to address many of the *Wilson* factors in its competency inquiry. For instance, the trial court did not address the strength of the prosecution's case in determining whether the defendant's amnesia would prejudice his ability to defend himself. *See People v. Palmer,* 9 P.3d 1156, 1160 (Colo.App.2000) (concluding that the ev-

idence against the defendant was not overwhelming because there was some evidence that persons other than the defendant had driven the truck, and that the drugs were found in an unlocked container in an unenclosed area of the truck). Nor did the trial court address whether the defendant's impairment was real or feigned or whether a continuance in this trial might abate the effects of the defendant's amnesia, even though the defendant was diagnosed as having impaired cognitive judgment and as having problems with memory.

The trial court also failed to assess defense counsel's argument that he was unable to reconstruct the facts of the crime, and therefore a defense, as a result of the defendant's impairment. The trial court concluded that the defendant's inability to recall who would be a helpful witness does not constitute sufficient incompetence to proceed. I note that further inquiry is necessary to determine if other effects of the defendant's amnesia prejudice him in his ability to construct a defense. The majority holds, and I agree, that "a trial court need not, in all cases, make post-conviction findings of competency." Maj. op. at 870. However, in this case, where the pre-conviction competency hearing was inadequate, a post-conviction hearing is necessary.

Instead of remanding this case to the trial court to conduct the fact-specific inquiry necessary to make a competency determination, the majority conducts its own fact-specific inquiry to determine whether the defendant's amnesia prejudiced his ability to assist in his own defense. It is the trial court, not the appellate court who should conduct this factual inquiry. *Linley v. Hanson,* 173 Colo. 239, 242, 477 P.2d 453, 454 (1970) ("The trial court and not an appellate court is the trier of fact."); *see also Swanson,* 572 F.2d at 526 ("Because nonpathological amnesia may be difficult to ascertain, the district judge is in the best position to make a determination between allowing amnesia to become an unjustified haven for a defendant and, on the other hand, requiring an incompetent person to stand trial."). For example, the majority states that "the Defendant had an opportunity to discuss the charges and to provide

information concerning the crime to his attorney prior to his injury." Maj. op. at 870. Whether the defendant in fact discussed the case with his attorney prior to his head injury is precisely the kind of fact-specific inquiry appropriate for a trial court's determination.

Thus, because I would hold that the trial court failed to make sufficient findings of fact to determine the defendant's competency to stand trial, and because this fact-specific inquiry should be made by a trial court and not an appellate court, I would remand this case to the court of appeals with instructions to return this case to the trial court to conduct a fact-specific inquiry, using the *Wilson* factors as guidance, to determine the defendant's competency.

I am authorized to state that Justice MARTINEZ joins in this concurrence and dissent.