[Crim. No. 451.   Fifth Dist.   July 22, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD HOUSTON McBROOM, Defendant and Appellant.

Peter G. Fetros, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Frank O. Bell, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Appellant appeals from a judgment of conviction after a jury verdict of guilty of burglary, assault with a deadly weapon and assault with a deadly weapon upon a police officer.

In the early morning of July 20, 1966, appellant, John D. Jones and David Matranga climbed onto the roof of a grocery store, pried off an air vent, kicked a hole in the ceiling and lowered themselves into the store with a rope. Matranga had a pistol when he entered the store, and appellant had a pistol when he was in the store.

At about 5 a.m. that morning Sacramento Police Officers Fontaine and Finney received a call to proceed to the grocery store. A few moments after their arrival other officers arrived, and they all surrounded the market. Fontaine, who was in full uniform, heard noises at the rear of the store. He stepped to a window, shined his light into the building and saw appellant crouching on the floor. After Fontaine ordered appellant to stop or be shot, appellant walked toward Fontaine and shot Fontaine in the hand. Out front where the store lights were on, Finney had seen appellant retreat into a back room. Shortly, Officers Grundel and Van Der Volgen dropped through the hole in the ceiling. Finney heard a shot from the rear of the market. Then appellant and Matranga emerged from a door in the rear and ran toward the front of the store. Each had a pistol in his hand.

As they ran, appellant shot at Officer Grundel, who had stepped out from behind a wall in full uniform. Officer Grun-

del shot back, and appellant fell down. Appellant crawled behind a pickle barrel, and Matranga ran behind a produce counter. Other officers shot, and then they ordered the two to surrender. Matranga did so while appellant remained behind the pickle barrel. One officer again shot in appellant's direction before Officer Hollingshead shouted he had appellant covered. When Hollingshead approached appellant he found him unconscious and took a pistol from his hand.

Appellant was taken to the Sacramento County Hospital for treatment. He had been shot in the head just behind the ear and in the right leg.

Three pistols were found at the scene. One was a toy pistol taken from Jones in the storeroom, one was a pistol Matranga threw out when he surrendered, and the other was the pistol taken from appellant. A spent cartridge was found in the storeroom in the rear of the store, and another was recovered near the meat counter where appellant had been running. Both cartridges had been fired in the pistol taken from appellant, and an examination of Matranga's gun revealed it had not been fired recently.

On September 6, 1966, the defendant pleaded not guilty and reserved a right to enter a plea of not guilty by reason of insanity. On October 3, 1966, Judge Mundt again continued the matter to allow defense counsel to obtain a private doctor's report of an examination of the defendant. On October 10, 1966, appellant entered a plea of ''Not Guilty by Reason of Insanity,'' and Judge Mundt appointed two psychiatrists to examine appellant pursuant to Penal Code section 1027. On December 6, 1966, subsequent to the appointed psychiatrists' examination of appellant, Judge Gallagher held a hearing on a motion to declare doubt as to defendant's sanity pursuant to Penal Code section 1368, and he determined there were insufficient grounds to doubt appellant's sanity.

The trial began December 8, 1966. During the trial and in the absence of the jury, the appellant renewed his motion to declare doubt as to his sanity. At that time he also argued that trying him violated his right to equal protection and due process in that he could not aid his counsel at trial since he could not remember what happened at the time of the crime. Trial counsel argued that such amnesia constituted ''insanity as a matter of law from the standpoint of being able to go to trial.'' However, Judge Gallagher declared he was satisfied appellant was sane within the meaning of Penal Code section 1638 ''and in every other sense.'' On appeal, instead of merely arguing he could not be tried at all while suffering

from amnesia, appellant also contends his conviction should be reversed because the court should have ordered a continuance to give appellant the opportunity to recover his memory through therapy.

It is well settled that a defendant is sane within the meaning of Penal Code section 1368 if he is able to understand the nature and purpose of the proceedings against him and to rationally conduct his own defense (*People* v. *Aparicio,* 38 Cal.2d 565, 567 [241 P.2d 221] ; *People* v. *Merkouris,* 52 Cal.2d 672, 678 [344 P.2d 1]). Moreover, the determination of a motion for a hearing upon the issue of a defendant's sanity at the time of trial is one which rests within the sound discretion of the trial court (*People* v. *Merkouris, supra,* 52 Cal.2d at p. 678.) And the conclusion of the trial judge may not be disturbed on appeal unless doubt appears as a matter of law or the trial judge abused his discretion (*People* v. *Jensen,* 43 Cal.2d 572, 576 [275 P.2d 25]).

The first time Judge Gallagher determined the issue of doubt as to present sanity to stand trial he had the reports of the two appointed psychiatrists. One opined that appellant could understand the proceedings against him and was able to cooperate with counsel. The other noted appellant appeared at his interview to be rational and coherent. Moreover, when defense counsel renewed his motion during trial, he admitted appellant could comprehend the proceedings and cooperate with his counsel. Thus, even if appellant's memory for past events was permanently impaired, his amnesia could not compel doubt as a matter of law. Unlike insanity, a person suffering from amnesia may be perfectly rational within the meaning of Penal Code section 1368. We conclude the record before us amply supports the trial judge's determination of the motion for a hearing upon defendant's sanity to stand trial.

Apparently the appellant sees the difficulty in his first argument since his main contention for reversal is that the trial court denied appellant due process by not continuing the trial in order to give appellant the opportunity to regain his memory. Specifically, he argues that trying him while he suffered from amnesia denied him the right to meaningfully assist his counsel because he could not give his own version as to what occurred at the scene of the crime. Especially regarding the assault charges, he argues he might have been able to recall facts which would have constituted a defense if he had recovered his memory.

Appellant relies on *Arizona* v. *McClendon*, 101 Ariz. 285 [419 P.2d 69]. In *McClendon* the defendant undisputably had amnesia and had requested a reasonable continuance in order to attempt to recover his memory. The trial court refused a continuance on the grounds the defendant was capable of assisting in his own defense and that complete recovery was unlikely no matter how much time the defendant was given. The trial judge based his determination upon the report of one psychiatrist who examined McClendon less than one hour. The Arizona Supreme Court reversed and held it was unfair to compel a defendant to go to trial when he was not sufficiently in possession of his memory to adequately assist his counsel and when his amnesic state may be temporary and susceptible to treatment.

Although we find the reasoning of the Arizona Supreme Court persuasive, the record on this appeal compels us to reach a different result.

First, appellant here got every continuance he requested which postponed the trial more than three months from the date of the entry of the plea. However, apparently appellant was not satisfied with the mere continuances. He apparently wanted an indefinite postponement of the trial until he should regain his memory fortuitously or otherwise. And, significantly, he wanted such postponement without making any attempt to show his alleged amnesia was temporary and susceptible to therapy. Moreover, appellant had ample time to determine the nature and extent of his illness since he was aware of the possibility of amnesia as early as September 6, 1966, and trial did not begin until December 8, 1966.

Second, appellant did not establish he ever had amnesia. The record reveals the trial judge doubted appellant had amnesia[1], and the medical reports provide ample cause for his disbelief. One of the two appointed doctors could only opine the appellant's memory was "faulty," whereas the other

---

[1] "THE COURT: He has actually good memory, he just—this is your position—he lacks memory relating to the incident itself. Other than that, he has good memory.

"MR. McMORRIS: Impaired but sufficient to go to trial except as to that—as to the crucial thing here, as to the crime.

"THE COURT: Well, of course, there is nothing to suggest to the Court that he is imperative [*sic*]. He appeared to be able to answer questions concerning incidents prior to the injury itself.

"MR. McMORRIS: He indicated he had difficulty remembering people's names and other things.

"THE COURT: A lot of that wasn't due apparently to some type of injury caused—faulty memory, but a rather—like I guess all of us have. Sometimes we can't recall everything, experiences, names."

doctor asserted appellant's memory was "selective" and appellant appeared to be "dishonest" when he claimed loss of memory. Even appellant's private doctor would only assert appellant had "partial amnesia."[2] Moreover, although the neurosurgeon who operated on appellant testified that appellant's wound could reasonably cause a loss of memory, he also testified that amnesia which extended back more than one to two hours before the injury would be rare. Yet appellant claimed he could remember little that happened to him as far back as four or five days prior to the burglary and shooting.

All persons suffer from varying degrees of loss of memory and appellant is no more disadvantaged than many defendants for whom facts are unavailable for reasons other than amnesia (see *Amnesia: A Case Study in the Limits of Particular Justice*, 71 Yale L.J. 109). Thus, unless an extraordinary case is presented, the trial of a presently rational and cooperative individual should not be reversed where he was given adequate time, counsel and medical attention merely because he alleges he cannot remember the events surrounding the crime. Amnesia is very easy to feign and hard to disprove.

The appellant here has been convicted of assault with a deadly weapon and assault with a deadly weapon upon a police officer. Since he has already been given a higher sentence by his convictions for being armed during the time, Penal Code section 12022 which requires a mandatory 5 to 10-year consecutive sentence for the finding appellant was armed during the commission of the crime is inapplicable (*People* v. *Thomsen*, 239 Cal.App.2d 84, 98 [48 Cal.Rptr. 455]).

The arms clause must also be stricken from the judgment of conviction of first degree burglary. As we have stated, defendant was convicted of assault with a deadly weapon and assault with a deadly weapon upon a police officer and was sentenced on both of these counts. Thus, these assaults cannot be used to increase the burglary from second to first degree without constituting double punishment for the same assaults (Pen. Code, § 654). However, the jury also found that defendant was armed with a deadly weapon when he committed the burglary, and this finding increased the burglary from

---

[2]"We have here a 23 year old male who has a brain injury as a result of a gunshot wound. At this time he shows a partial amnesia of the events immediately preceeding [*sic*], the incident itself, and some time afterward. He definitely shows diminished vision as a result of the injury. In addition, he is unable to handle some of the more complex mental functions, but he certainly understands the nature of the crime he is charged with and he is planning to co-operate with his attorney."

burglary in the second degree to burglary in the first degree. But since the fact that defendant was armed increased the burglary to first degree, this fact cannot be used to increase the sentence under the arms clause (*People* v. *Thomsen, supra*).

The judgment must be affirmed except all counts are modified by striking therefrom the following language:

"Defendant was charged and admitted being, or was found to have been armed with a deadly weapon at the time of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code sections 969c and 3024."

The judgment is affirmed in all other respects.

Conley, P. J., and Stone, J., concurred.

On August 21, 1968, the opinion was modified to read as printed above.