[No. F008301. Fifth Dist. May 5, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
NIEVES ARRENDONDO AMADOR, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Krajewski, Faulkner & McCrew and Kent M. Faulkner for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Susan Rankin Bunting and Ruth M. Saavedra, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BROWN (G. A.), J.*—**Nieves Arrendondo Amador appeals from a judgment entered upon his nolo contendere plea to two counts of attempted murder (Pen. Code, §§ 664/187),[1] one count of first degree burglary (§ 459), and one count of assault with a firearm (§ 245, subd. (a)(2)). In addition, he did not contest the personal use of a firearm (§ 12022.5) or the infliction of great bodily injury (§ 12022.7) enhancements to the attempted murder counts, nor the section 12022.5 enhancement to the burglary and assault counts.

Before trial, the court expressed doubt as to appellant's competency to stand trial and appointed a psychologist to examine him pursuant to section 1368.[2] The psychologist opined appellant was incompetent and unable to rationally assist counsel in presenting a defense because he suffered permanent amnesia for the events surrounding the offense. No other aspects of appellant's behavior or mental condition contributed to the psychologist's opinion. The psychologist concluded he was incompetent to stand trial because a criminal defendant must be able to recall his movements, timing and state of mind at the time of the alleged offense in order to assist counsel in presenting a defense. The psychologist also concluded appellant was capable of understanding the nature and object of the criminal proceedings. He was aware of the charges, their seriousness and the potential penalties if he was found guilty. And, appellant had no impairment to legal competency other than his inability to remember the details of the offense.

The court agreed that appellant suffered from amnesia but concluded that amnesia alone did not render him legally incompetent to stand trial.

Appellant then entered his pleas and was sentenced to state prison for 12 years. He received the nine-year upper term for one of the attempted murder counts plus three years for the section 12022.7 enhancement; the.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Section 1368 provides: "(a) If, during the pendency of an action . . . a doubt arises in the mind of the judge as to the mental competence of the defendant, . . . the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time.

"(b) If counsel informs the court that he believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing. . . .

"(c) . . . when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined."

sentences for the remaining three counts and enhancements were stayed. The court issued a certificate of probable cause and released appellant on bail pending his appeal.

Appellant raises two issues on appeal: (1) whether his amnesia rendered him incompetent to stand trial and (2) whether he was sentenced properly to the upper term. We will affirm the judgment.

## FACTS

The facts elicited at the preliminary hearing revealed that on May 28, 1985, Mary Canedo was demonstrating her new sewing machine to her husband, her son Jess, a friend named Lozaro Hernandez, and her three young daughters. Appellant, who was married to Mary's sister, came through the front door carrying a shotgun and asked, "Where's your mom? Where's Mary?" He walked into the livingroom and said, "I've come to kill you." Appellant pointed the gun at the three men and motioned for them to back off. He then pointed the gun at Mary, repeated, "I have come to kill you," and cocked the gun.

Mary told Lozaro to get the gun out of her face. Lozaro pushed the gun slightly. At that time, Mary's four-year-old daughter ran up screaming, "no, no." The gun fired and mother and daughter were hit. Both received serious injuries.

After the shot was fired, Mary's husband scuffled with appellant and, during the melee, appellant received a head injury.

Several months earlier, Mary and her children were visiting appellant and his wife. After he had a fight with his wife, appellant threatened to blow off the heads of his wife, Mary and Mary's children.

## DISCUSSION

## I

### *Amnesia*

 Appellant contends he was incompetent to stand trial because the head injury he suffered at the time of the alleged offenses caused him to have no memory of the events which resulted in the charges. He maintains he cannot assist counsel in the conduct of his defense in a rational manner because he cannot participate in trial strategy or effective cross-examination without any personal knowledge of the events.

The Attorney General concedes appellant's amnesia is genuine, but submits the amnesia did not render him incompetent to stand trial.

A person cannot be tried or adjudged to punishment while he is mentally incompetent. A defendant is mentally incompetent if, as a result of a mental disorder, he is unable to understand the nature and purpose of the criminal proceedings taken against him, does not comprehend his own status and condition in reference to such proceedings, or is unable to assist counsel in the conduct of a defense in a rational manner. (§ 1367; *People* v. *Campbell* (1976) 63 Cal.App.3d 599, 608 [133 Cal.Rptr. 815].) The applicable statutes and case law embody the constitutional right of every accused to a fair trial that is part of the Fourteenth Amendment's due process requirement. (*Pate* v. *Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836].)

The defendant is presumed mentally competent until it is proved by a preponderance of the evidence that he is incompetent. (§ 1369, subd. (f).) ■ The trial court's task in competency proceedings is to determine whether the defendant is "competent" in a legal sense. The appellate court's task is to determine whether the evidence, viewed in the light most favorable to the verdict, supports the trial court's finding. (*People* v. *Samuel* (1981) 29 Cal.3d 489, 505 [174 Cal.Rptr. 684, 629 P.2d 485].)

■ We have found only one California case which has referred to amnesia in the context of incompetency. In *People* v. *McBroom* (1968) 264 Cal.App.2d 242 [70 Cal.Rptr. 326], this court said that ". . . the trial of a presently rational and cooperative individual should not be reversed . . . merely because he alleges he cannot remember the events surrounding the crime. Amnesia is very easy to feign and hard to disprove." (*Id*. at p. 247.) The court noted, however, the defendant did not establish he had amnesia and the trial court doubted defendant's complaint. (*Id*. at pp. 246-247.) Because the court in *McBroom* was not directly confronted with the issue, we shall discuss it in more detail.

Many out-of-state cases have addressed the due process implications of trying a defendant with genuine amnesia as to the circumstances of the alleged offense. Almost universally, the courts agree that amnesia in and of itself does not render a defendant incapable of standing trial, of receiving a fair trial, or of assisting his counsel in the defense of his case. (Annot., Amnesia as Affecting Capacity to Commit Crime or Stand Trial (1987 supp.) 46 A.L.R.3d 544, 551-555, 561-569.) This conclusion is based on various rationales, the principal ones of which we shall proceed to discuss.

"In a sense, the inability to testify personally as to certain facts is a disability shared in greater or lesser degree by all defendants as a result of

normal attrition of memory or failure of observation. 'In his plight the amnesiac differs very little from an accused who was home alone, asleep in bed, at the time of the crime or from a defendant whose only witnesses die or disappear before trial. Furthermore, court, of necessity, must decide guilt or innocence on the basis of available facts even where those facts are known to be incomplete, and the amnesiac's loss of memory differs only in degree from that experienced by every defendant, witness, attorney, judge, and venireman. How much worse off is a generally amnesic defendant on trial for murder, for example, than one who remembers all but the dispositive fact: who struck the first blow? . . . Notes and Comments, *Amnesia: A Case Study in the Limits of Particular Justice,* 71 Yale L.J. 109, 128 (1961-62).' " (*State* v. *McIntosh* (1987) 137 Wis.2d 339 [404 N.W.2d 557, 561].)

Many times in criminal trials evidence is lost, a material witness dies or the defendant has amnesia as to certain events or times. However, such handicaps cannot prevent the trial from eventually taking place. Rarely is there a defendant who could not contend that he was deprived of some evidence and therefore should not be tried. However, evidence which is never to be obtained because of the death of a witness cannot prevent a criminal trial from proceeding and the same must be said for the case in which the defendant has amnesia. (*Reagon* v. *State* (1969) 253 Ind. 143 [251 N.E.2d 829, 831].)

The amnesic defendant is no worse off than the defendant who cannot remember where he was on a particular day because of the passage of time, or because he was drunk, drugged, unconscious or asleep at the time of the crime. Moreover, amnesia does not inhibit discussion between attorney and client as to tactical decisions concerning the trial. (*Morrow* v. *State* (1982) 293 Md. 247 [443 A.2d 108, 112, 113].)

Amnesia as to the alleged offense does not totally incapacitate the defense and a defendant is still free to assist counsel in numerous other ways. ■ A defendant is entitled to a fair trial, not necessarily a perfect trial. (*State* v. *McClendon* (1968) 103 Ariz. 105 [437 P.2d 421, 425].)

■ If the defendant's condition of amnesia is permanent, to hold that amnesia renders a defendant incapable of standing trial would require courts to hold that amnesia will completely negate all criminal responsibility and "will turn over the determination of crime and criminal liability to psychiatrists, whose opinions are usually based in large part upon defendant's self-serving statements, instead of to Courts and juries, and . . . will greatly jeopardize the safety and security of law-abiding citizens and render the protection of Society from crime and criminals far more difficult than

ever before in modern history." (*State* v. *McClendon, supra,* 437 P.2d 421, 425.)

Because these views are eminently sound and are in accord with the overwhelming weight of authority in this country, we adopt them as our own.

We are mindful of a few cases that hold to the view that amnesia is a factor to be considered in determining whether a defendant can receive a fair trial. These cases adhere to the approach that the fundamental fairness of trying an amnesic defendant may vary depending upon the crime and the circumstances surrounding the claimed loss of memory. Accordingly, the propriety of trying an amnesic defendant should be determined on a case-by-case basis. (*United States* v. *Swanson* (5th Cir. 1978) 572 F.2d 523, 526; see also *United States* v. *Rinchack* (11th Cir. 1987) 820 F.2d 1557, 1569; *United States* v. *Mota* (5th Cir. 1979) 598 F.2d 995, 998; *Wilson* v. *United States* ( D.C. Cir. 1968) 129 App.D.C. 107 [391 F.2d 460, 463-464]; *Commonwealth* v. *Lombardi* (1979) 378 Mass. 612 [393 N.E.2d 346, 348-349].)

Given the prosecutor's burden to prove a criminal case beyond a reasonable doubt without the defendant's testimony, it is difficult to conceive of a case where the evidence independent of the defendant's testimony and observations would not be sufficient to preclude denial of a fair trial based upon defendant's amnesia *alone*. In fact, in reviewing the cases which espouse this doctrine, it appears none resulted in reversal based upon defendant's amnesia *alone*.

For example, in *People* v. *Francabandera* (1974) 33 N.Y.2d 429 [310 N.E.2d 292], defendant had retrograde amnesia due to a gunshot wound to his head which occurred during the perpetration of the charged offense. The court found defendant competent to stand trial and defendant thereafter pled guilty. The issue on appeal was whether defendant's inability to remember crucial events rendered him unfit to stand trial. The court found no indication that defendant had been deprived of constitutional rights. Had defendant chosen to go to trial, his trial would have been fair. The alleged crime was played out in front of an audience and the overwhelming evidence, all of which was made available to defendant by the prosecutor, pointed to defendant's guilt. (*Id*. at p. 296.) See also *United States* v. *Borum* (10th Cir. 1972) 464 F.2d 896, 900, "There is no suggestion as to the existence of a tenable defense which has been locked in by the amnesia"; *People* v. *Stolze* (1980) 100 Mich.App. 511 [299 N.W.2d 61, 62-63], defendant's memory would have been of questionable help to defense counsel because of the number of witnesses and the extrinsic evidence implicating defendant in the crime. In these cases, there was no deprivation of due

process where evidence of guilt was overwhelming and loss of memory did not deprive defendant of any available defense.

If we applied the latter rule to the instant case, it would not result in a reversal. Appellant chose to plead nolo contendere to the alleged offenses rather than go to trial. However, had appellant opted for a trial, there is no indication that his amnesia precluded a defense otherwise available. Appellant claimed his amnesia denied him the ability to present a defense of lack of intent as to the murder counts. Appellant also complained that all witnesses to the alleged offenses were "hostile" and he had no witnesses to present his version of the events.

At the preliminary hearing, the People produced overwhelming evidence of appellant's involvement in the offenses. Three eyewitnesses, including two of the victims, described the assault and shooting. The event was reconstructed in front of the court and there was no showing that appellant would not be afforded full access, prior to trial, to information used by the People. Moreover, had appellant gone to trial, his attorney was free to fully cross-examine the witnesses regarding their testimony of the event. And, appellant could have attempted to negate intent to kill with evidence of his mental state, peaceful conduct or lack of animosity toward the victim before the incident if such evidence might have provided a defense to the charges. Thus, it cannot be said that appellant's amnesia would have thwarted the factfinding process or denied him a fair trial.

## II

*Sentencing**

. . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Best, Acting P. J., and Ballantyne, J., concurred.

---

* See footnote, *ante,* page 1449.