Filed 11/21/23  P. v. Dwyer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096721 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE013953) |
| v. | |
| MICHAEL DWYER, | |
| Defendant and Appellant. | |

Defendant Michael Dwyer assaulted his then-wife, bound her, put her in the trunk of her car, drove her to another location, and then violently interrogated her.  After he took some pills and lost consciousness, his wife was able to escape and call 911.  Shortly after, while in the presence of the police, defendant took his wife's car and fled the scene until he crashed her vehicle following a police chase.

1

The trial court held two competency hearings, and following each, found defendant competent to stand trial. After a jury trial, defendant was convicted of, among other offenses, kidnapping during a carjacking under Penal Code[1] section 209.5.

Defendant makes two arguments on appeal: (1) the trial court's competency finding lacked substantial evidence; and (2) the conviction for kidnapping during a carjacking lacked substantial evidence. We affirm the trial court's competency finding but reverse the conviction for kidnapping during a carjacking, because there was no evidence defendant committed the kidnapping with the specific intent to facilitate the carjacking as required by section 209.5.

## BACKGROUND

Defendant was charged with kidnapping (§ 207, subd. (a)), corporal injury (§ 273.5), evading a peace officer (Veh. Code, § 2800.2, subd. (a)), kidnapping during a carjacking (§ 209.5, subd. (a)), criminal threats (§ 422), and driving under the influence of drugs (Veh. Code, § 23152, subd. (f)).

A. *First competency hearing*

On May 7, 2019, the trial court appointed Dr. Eugene Roeder, a psychologist, to determine whether defendant was mentally competent to stand trial. The trial court held a court trial on defendant's competency on November 18, 2019.

At the hearing, Dr. Martin Williams, a psychologist, testified for the defense. Dr. Williams met with defendant in person for one to two hours and concluded defendant was not psychotic and had adequate knowledge of courtroom procedures, understood his status as a criminal defendant, knew the charges against him, and understood the possible sentence he faced. However, defendant had memory issues. He did not remember anything about his alleged crimes, had short-term memory impairment, and would

---

[1] Undesignated statutory references are to the Penal Code.

2

unknowingly mask or hide the impairment by unintentionally acting as if an inaccurate memory was accurate. In Dr. Williams's opinion, this was a "big concern" for competency to stand trial as defendant "could not accurately follow the proceedings and he wouldn't make that clear" to his attorney. So, "the trial would probably go the same whether [defendant] was present or not based on his inability to properly assist" his counsel.

The defense also called Marsha Whiten, defendant's current wife who lived and worked with defendant. She testified she had been living with him for about a year and had seen several instances of his poor memory.

The prosecutor called Dr. Roeder, who testified defendant had difficulties with his memory. He said defendant had no recollection of the events underlying his case and presented some "significant memory deficits." But defendant was able to answer questions about courtroom procedures and he understood he was facing felony charges and serious potential consequences, so Dr. Roeder felt defendant met "the basic criteria for the understanding prong of trial competence." Defendant also told Dr. Roeder he had fired two previous attorneys because he "just didn't feel like they were quite enough in talking with him about his defense." Defendant also expressed frustration with his medical provider and efforts to seek a transfer to another hospital.

Dr. Roeder concluded that, despite defendant's inability to remember the relevant events and other memory issues, he was "cognitively able to corroborate and assist" his attorney in present time because defendant demonstrated the ability to do so during his initial evaluation.

Defendant hired Dr. Roeder to reevaluate him and so he met with defendant again for another hour a few months after their initial meeting. Dr. Roeder did not change his fundamental opinion of defendant's understanding of the criminal proceedings and competence after the second meeting.

3

The prosecutor also called Dr. David Konczal, defendant's psychiatrist who met with defendant six to eight times. Dr. Konczal tested defendant twice for cognitive deficiencies and defendant scored at normal levels. Dr. Konczal did not diagnose defendant with dementia, found "[i]t seems like the memory was intact as well," and testified he had not seen any test showing defendant had memory issues.

On December 3, 2019, the court found that, although defendant was "suffering from some cognitive issues," the evidence showed defendant "can hold a logical conversation and can consult with others." This conclusion was based on defendant communicating his frustrations with his medical provider and desire to receive a referral for better treatment. Defendant also expressed dissatisfaction with his prior attorneys and stated he was happy with his current attorney. The court also noted "amnesia and not remembering the event doesn't get you there. The issue is, can he hold a logical conversation in consulting with counsel with a rational degree of understanding." The court found the defense had "not overcome the presumption of competency by a preponderance of the evidence. And, therefore, I do find that the defendant is competent to stand trial. And, as a result, criminal proceedings will be reinstated."

B. *Second competency request*

On August 19, 2020, defense counsel filed a motion for a second competency hearing, asking the court to review information indicating defendant might have experienced a prior traumatic injury.

On November 9, 2020, the trial court held a hearing on the motion and defendant's counsel argued he needed to gather more information on defendant's potential traumatic brain injury because it could have impacted the doctors' opinions. The court denied the motion, finding a brain scan could not show a change of circumstances, but at most "show more detail of his condition," and "the scan and the diagnosis do not appear to cast serious doubt on the prior findings of competence at this time, because they don't offer a serious challenge to the prior doctors' reports showing how defendant's brain issues were

4

affecting his ability to understand the nature of the proceedings or assist counsel in his defense." The trial court denied the motion for a second competency trial, but also stated "there's nothing in the law to prevent the defense from bringing this motion again should they develop that evidence."

C. *Marsden hearing*

On May 3, 2022, the trial court held a *Marsden*[2] hearing and discussed defendant's opinion of his counsel. Among other grievances, defendant told the court he thought "somebody is watching me, they must be trying to gather evidence." This was based in part on cameras in his house being re-registered to a username indicating "district attorney" but with his current wife's e-mail address. Defendant told the court this was evidence the district attorney was trying to gather evidence against him, and his attorney "dismissed" these concerns. Defendant also complained about the plea negotiation process, saying he e-mailed his previous attorney "some things that I thought were pertinent to the case and I never got a response." He did not find out for some time that he had a new attorney.

Defendant also complained his attorney was not meeting with him enough and would appear on defendant's behalf without his consent. He then expressed concern about the police confiscating his computer because he allegedly had evidence indicating some Oakland Police were potentially protecting human trafficking organizations. Defendant's counsel advised the court he originally did not think he could challenge defendant's competency because "obviously if you know what's going on in the case and giving me arguments, I can't . . . [section] 1368 you."

The trial court denied the *Marsden* motion.

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

D. *Trial*

The victim, C.D., testified she was married to, but not living with, defendant on July 15, 2016. On that day, she opened her garage to leave in her car when defendant rushed inside. She backed up to try and figure out what he wanted but he grabbed her hair, hit her in the head, and she fell over. The next thing she remembered was being in her bedroom on her knees with her hands taped in front of her and her mouth taped shut. Defendant then walked C.D. downstairs to the garage, pulled things out of her trunk, and told her to get in the trunk. C.D. repeatedly said "no" but eventually relented. C.D. did not remember defendant ever driving her car before as they each had their own cars, and she had not given him permission that day to drive her car. C.D. was "scared to death" and, although defendant had taken her phone, she was able to call for help from inside the trunk by using her watch.

The car eventually stopped, and defendant opened the trunk. C.D. noticed she was in defendant's sister's garage in Elk Grove, where he also lived, about six miles from C.D.'s house. Defendant walked C.D. upstairs, zip-tied her hands behind her and her legs together, placed her in the tub, and then began "waterboarding" her by putting a washcloth over her face and pouring water over her face. He asked C.D. who she was sleeping with because he thought she was cheating.

C.D. complained she was losing feeling in her hands, so defendant sat her up and untied her hands. Defendant then swallowed some pills. He said, "they were going to find both of us," put a grocery bag over his head, got down on the floor, and eventually stopped moving. C.D. was able to escape while defendant was motionless, and she ran out of the house to call police. When officers arrived, defendant pulled out of the garage in C.D.'s car and drove away.

C.D.'s 911 call was played for the jury. On it, C.D. explained what happened and said, "He told his sister to go away [from the house] so he could talk to me." Defendant

6

had told C.D. this during the kidnapping. The parties also stipulated defendant's sister told police defendant asked her to leave because he was bringing C.D. over to talk to her.

Officers testified they found C.D. upset outside of the house. One officer then followed defendant until he crashed C.D.'s car. Defendant was found in the car unconscious. Defendant testified he had no memory of these events and that his first related memory was waking up in the hospital.

As will be discussed later, the jury instruction for the kidnapping during a carjacking charge included as one of the elements: "The defendant moved or caused the other person to move with the intent to facilitate the carjacking or to help himself escape or to prevent the other person from sounding an alarm." During closing argument, the prosecutor asserted this element was met because defendant "was going to do what he needed to do to take her car. And taking her, moving her, helped him to both continue to keep her car and to help him get away. [¶] . . . [¶] [H]e had already kidnapped her when he took her to her room. But that wasn't enough for him. . . . He was stealing that car, and he was using everything in his power to take her and that car."

The jury found defendant guilty of all charges except for driving under the influence of drugs. The trial court sentenced defendant to an indeterminate term of seven years to life for the kidnapping during a carjacking conviction and a consecutive determinate term of four years eight months, comprised of four years (upper term) for corporal injury to a spouse and eight months for evading a police officer. The court also imposed three years (upper term) for criminal threats but ran that sentence concurrent and imposed eight years (upper term) for kidnapping but stayed that sentence under section 654.

DISCUSSION

I

*Competency Findings*

Defendant first argues he "was forced to go to trial where there was substantial evidence indicating that his memory impairment would prevent him from assisting counsel at trial and he would be unable to tell counsel when he did not understand or did not remember." Defendant also challenges the court's denial of his request for a second competency hearing and asserts his statements made during the *Marsden* hearing "displayed paranoid and delusional thinking," requiring sua sponte reconsideration of his competency. We disagree.

*A. Applicable legal standards*

"The United States Supreme Court has 'repeatedly and consistently recognized that "the criminal trial of an incompetent defendant violates due process." ' [Citation.] A defendant is deemed incompetent to stand trial if he lacks ' " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [or] a rational as well as factual understanding of the proceedings against him.' " ' " (*People v. Lightsey* (2012) 54 Cal.4th 668, 690.)

"The applicable state statutes essentially parallel the state and federal constitutional directives." (*People v. Lightsey*, *supra*, 54 Cal.4th at p. 691.) Section 1367, subdivision (a) provides: "A person shall not be tried or adjudged to punishment . . . while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." There is a presumption of competence to stand trial, and the defendant bears the burden of proving by a preponderance of the evidence that he or she lacks competence. (§ 1369, subd. (f).)

"We apply a deferential substantial evidence standard of review on appeal. 'In reviewing a [factfinder's] determination that a defendant is competent to proceed to trial, we give due deference to the trier of fact, and therefore view the record in the light most favorable to the verdict.' [Citations.] When the sufficiency of the evidence to support the verdict is challenged, our review is limited to the evidence presented at the competency trial." (*People v. Mendoza* (2016) 62 Cal.4th 856, 871-872.)

*B. First competency hearing*

There are two aspects of competency: (1) the ability to understand the nature of the criminal proceedings, and (2) the ability to assist counsel in a rational manner. Defendant is not challenging the first prong. Dr. Williams and Dr. Roeder both testified they believed defendant understood the relevant criminal procedures and charges against him.

The contested issue here is the second prong, whether defendant could rationally assist his counsel. We conclude there is also substantial evidence supporting this finding. Initially, we reject any argument that defendant's alleged amnesia requires finding an inability to assist his counsel. Memory impairment "does not, standing alone, establish incompetency." (*People v. Jablonski* (2006) 37 Cal.4th 774, 809.) Instead, "the propriety of trying an amnesic defendant should be determined on a case-by-case basis." (*People v. Amador* (1988) 200 Cal.App.3d 1449, 1455.) Here there was no evidence that an inability to remember the crimes would render defendant unable to assist his counsel any more than if "he was drunk, drugged, unconscious or asleep at the time of the crime." (*Id.* at p. 1454.)

There was evidence defendant had short-term memory issues distinct from not remembering the crimes, but this also did not preclude him from assisting his attorney. Defendant's main evidence on this point is Dr. Williams's testimony that defendant had short-term memory issues making it difficult for him to follow the proceedings and assist his attorney in real time. In his opinion, defendant could not contribute at all during the

9

trial. But this conclusion was based on one meeting lasting one to two hours. Dr. Roeder and Dr. Konczal offered differing opinions, and Dr. Konczal was defendant's own psychiatrist who met with defendant at least six times. Dr. Konczal testified defendant tested at normal levels, he had not seen any test showing defendant had memory issues, and he concluded "it seems like the memory was intact as well." Dr. Roeder similarly concluded defendant was "cognitively able to corroborate and assist" his attorney in present time because defendant demonstrated the ability to do so during his initial evaluation. Even when defendant hired Dr. Roeder to reevaluate him, Dr. Roeder did not change his underlying conclusion. There is substantial evidence defendant did not overcome the presumption of competency.

### C. *Request for second competency hearing*

We similarly reject defendant's contention the trial court erred in denying him a second competency hearing. " '[A] second competency hearing is required only if the evidence discloses a substantial change of circumstances or new evidence is presented casting serious doubt on the validity of the prior finding of the defendant's competence.' " (*People v. Leonard* (2007) 40 Cal.4th 1370, 1415.)

Defendant presented no evidence of a change of circumstances, let alone a substantial change. He argued there was evidence he had experienced a traumatic head injury, but this head injury occurred prior to the doctors' evaluation and testimony regarding defendant's competency. Therefore, even assuming defendant had experienced such trauma, the doctors would have already evaluated the effects and incorporated such into their analyses. Further, the trial court stated defendant was not prohibited from bringing the motion again should additional relevant evidence be obtained. There is no evidence in the record that any such request was made. For these reasons, the trial court did not improperly deny the request for the second competency hearing.

### D. Marsden hearing

Finally, defendant asserts statements he made during the *Marsden* hearing indicate incompetence. Trial courts do have "a sua sponte duty to evaluate competency at any time such a concern arises." (*People v. Braden* (2023) 14 Cal.5th 791, 813.) "A trial judge must suspend proceedings and hold a hearing 'whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial.' " (*People v. Johnson* (2018) 6 Cal.5th 541, 575.)

When looking at the entirety of the hearing, defendant's comments establish that he continued to understand criminal procedure and the charges against him. For example, he clearly articulated why he did not feel his attorney was adequately representing him citing: 1) his failure to routinely meet with him, 2) his failure to consider relevant evidence, and 3) appearing on defendant's behalf without his consent. Defendant's discussion regarding relevant evidence allegedly disregarded by his counsel also demonstrates defendant's ability to rationally assist his counsel in his defense.

The statements defendant focuses on do not counteract this evidence. Defendant contends his discussion regarding the district attorney monitoring him and that defendant supposedly had evidence the Oakland Police Department was protecting human trafficking "displayed paranoid and delusional thinking right before trial." Defendant does not explain how this establishes incompetence, even assuming these comments were irrational. Again, to be incompetent, defendant must not be able to understand the procedures and charges against him and be unable to rationally assist his counsel in his defense. Brief and potentially nonsensical or irrelevant dialogue does not establish this showing, especially when weighed against the entirety of the hearing where defendant demonstrated his competence. Even his attorney at the *Marsden* hearing said he did not think he could again challenge competency because defendant showed he knew "what's going on in the case and giving me arguments."

11

## II

### *Kidnapping During a Carjacking*

Defendant next argues the prosecution failed to produce sufficient evidence that he had the specific intent to kidnap "to facilitate a carjacking." The People contend there is substantial evidence supporting the conviction.

#### A. *Legal standards*

In reviewing a claim of insufficient evidence to support a conviction, we view the record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) Substantial evidence is evidence of ponderable legal significance which is reasonable in nature, credible, and of solid value. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) We presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence (*People v. Bloyd* (1987) 43 Cal.3d 333, 346-347) and will conclude there is no substantial evidence to support the conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented (*Johnson*, at p. 576).

Kidnapping during a carjacking occurs when the person, "during the commission of a carjacking and in order to facilitate the commission of the carjacking, kidnaps another person who is not a principal in the commission of the carjacking." (§ 209.5, subd. (a).) Carjacking is taking a vehicle from another person through force or fear with the intent to deprive the person of possession of the vehicle. (§ 215, subd. (a).) And kidnapping is forcibly taking and moving another person. (§ 207, subd. (a).)

#### B. *Analysis*

The egregious and violent facts here are not in dispute and support the jury's verdicts finding defendant guilty of carjacking and kidnapping. Defendant assaulted C.D. in her garage, took control of her car without her permission, and drove away,

12

establishing substantial evidence for a carjacking conviction. Defendant also forcibly restrained C.D. at her house, forced her into the trunk of her car, and moved her to his house, where he then forced her upstairs and violently interrogated her, more than establishing substantial evidence for a kidnapping conviction. The kidnapping and carjacking also happened at the same time, so there is substantial evidence defendant committed a kidnapping during the commission of a carjacking, partially satisfying section 209.5.

But section 209.5 has an extra step: one must kidnap another person "*in order to facilitate the commission of the carjacking.*" (§ 209.5, subd. (a), italics added.) "Facilitate" means to make the occurrence or commission of something easier. (See Black's Law Dict. (11th ed. 2019) pp. 734-735; Webster's 3d New Internat. Dict. (1993) p. 812.) Thus, section 209.5 not only requires committing a kidnapping during the commission of a carjacking, but the kidnapping must be done to make the carjacking easier. For example, if defendant had forced C.D. to drive her car during the carjacking, this kidnapping would arguably have made it easier for him to carjack her vehicle thus satisfying section 209.5's "facilitation element." (See *People v. Duran* (2001) 88 Cal.App.4th 1371, 1377 ["When Duran entered the car he threatened to kill the entire family if Beardsley did not take him where he wanted to go"].) Defendant did not force C.D. to drive the car, nor is there any other evidence that at any point during defendant's criminal behavior the kidnapping facilitated the carjacking.

Though the facilitation element is unambiguous, legislative intent helps provide context for this language. As our Supreme Court explained, the Legislature enacted section 209.5 and the simple carjacking statute, section 215, because of the inability for the robbery statute to address the " ' "*considerable increase in the number of persons who have been abducted*" ' " during car thefts, and " ' "[t]his relatively 'new' crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, *it would be simpler to hot-wire the automobile without running the risk of confronting the*

13

*driver*." ' . . . Such concern for the abduction and safety of a driver or passenger is particularly evident in section 209.5, which provides for significant punishment if the victim is also moved a substantial distance with the risk of increased harm." (*People v. Medina* (2007) 41 Cal.4th 685, 298.)

It appears the Legislature sought to punish with section 215 taking cars in the presence of occupants, and then with section 209.5 further punishing car thieves who kidnap the occupants to make the carjacking easier, significantly increasing the risk of harm. The Legislature does not appear to have been addressing the circumstance here where the evidence establishes defendant's only intent in kidnapping C.D. was to kidnap C.D., not to help him take her car; the carjacking was just another crime defendant committed in the process of the kidnapping. But regardless of the Legislature's reasoning, it enacted section 209.5 with a clear requirement the kidnapping must facilitate the carjacking, and we cannot find evidence of this here.

The People's main argument for support of the facilitation element is that defendant kidnapped C.D. to help him escape. Courts have found "if there is substantial evidence that [the defendant] intended the kidnapping to effect an escape or prevent an alarm from being sounded, his conviction for kidnapping during the commission of a carjacking must stand." (*People v. Perez* (2000) 84 Cal.App.4th 856, 861.) The kidnapping at C.D.'s house does not establish this because the only evidence for why defendant kidnapped C.D. from her house was to bring her to his house, not escape or otherwise facilitate the carjacking. Defendant did later take C.D.'s car to flee from police after C.D. escaped his house. But immediately prior to this attempted escape, defendant had bound C.D. in the bathroom, taken some pills, said "they were going to find both of us," put a grocery bag over his head, got down on the floor, and eventually stopped moving. With these facts, it is theoretically possible defendant still intended to eventually leave with the car. Maybe defendant intended to restrain C.D. in the bathroom to permit his later escape with her car and becoming unconscious was unintended. But

14

there is no evidence supporting these conjectures; there is no evidence defendant ever intended to leave the bathroom. The People's argument therefore rests exclusively on speculation, which is insufficient to support the conviction. (*People v. Goode* (2015) 243 Cal.App.4th 484, 488 [" '[A] jury may not rely upon unreasonable inferences, and . . . "[a]n inference is not reasonable if it is based only on speculation" ' "].)

Finally, the People argue at length for how "[t]here was also evidence of appellant's plan to steal C.D.'s car to effect an escape or prevent an alarm from being sounded," such as "[t]he parties stipulated that over an hour before appellant had kidnapped and transported C.D. to his house he had called his sister and asked her to leave because he was bringing C.D. over to talk to her. [Citation.] This reasonably infers that appellant knew that he needed to carjack her in order to take her with him so he would not be caught at her house." But carjacking her "in order to take her with him" is evidence the carjacking facilitated the kidnapping, not the kidnapping facilitating the carjacking. Whether defendant used the carjacking to help him commit the kidnapping of C.D. does not bear on whether there is evidence defendant kidnapped C.D. to facilitate the carjacking, the relevant issue here. This is a subtle but fundamentally crucial point in order for section 209.5 to apply.

In short, the only supported inference here is that the kidnapping concluded when defendant went unconscious and C.D. escaped and dialed 911. Defendant then formed the intent to use the car to escape the police. There is no evidence that at any point in this entire process the kidnapping was intended to make, or did in fact make, the carjacking or his attempted escape easier.

Without any doubt, the facts of this case are serious and troubling. There is more than enough evidence to establish a kidnapping occurred during the commission of a carjacking. But section 209.5 requires more than that; there must also be evidence the kidnapping facilitated the carjacking. There simply is no evidence that occurred here.

15

Defendant's conviction for kidnapping to facilitate a carjacking is not supported by substantial evidence and is reversed. However, because there is substantial evidence to support the lesser included offenses of carjacking and kidnapping, and defendant was already convicted for the kidnapping, we modify the section 209.5 conviction to reflect a conviction for carjacking under section 215 and remand for a full resentencing. (§§ 1181, case (6), 1260; *People v. Navarro* (2007) 40 Cal.4th 668, 671, 681.)

## DISPOSITION

The judgment is modified to reduce the conviction of kidnapping to facilitate carjacking (§ 209.5) on count four to reflect a conviction of the lesser included offense of carjacking (§ 215). The case is remanded for a full resentencing. In all other respects, the judgment is affirmed.

/s/
Wiseman, J.*

We concur:

/s/
Mauro, Acting P. J.

/s/
Renner, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.